## MONTAGUE VS. HORTON.

June Term,
1860.

MONTAGUE
v.
HORTON.

| | |
|---|---|
| 12 | 59? |
| 77 | 31 |
| 77 | 32? |
| 12 | 59? |
| 86 | 296 |
| 12 | 598 |
| 108 | 314 |

All moneys belonging to a county as such, and not held by it in trust, constitute one fund, out of which all its liabilities are to be paid.

Where a county order which directed the treasurer of the county to pay the amount thereof "out of the unappropriated money belonging to said county for jail purposes," had been duly presented for payment: *Held*, that the owner was entitled to payment thereof out of any funds belonging to the county, prior to the payment of any county orders subsequently presented.

Before the adoption of the Code of Procedure, a court of equity would interfere, by injunction or otherwise, to restrain or control the proceedings of subordinate tribunals, or the official acts of public officers, only when such acts or proceedings affected real estate, and would lead to irreparable injury to the freehold, or to the creation of a cloud upon the title, or where they would lead to a multiplicity of suits; and the Code has not enlarged the power of such courts in this respect, except in reference to temporary injunctions during the pendency of a litigation, which may now be granted, whether the action was formerly denominated legal or equitable.

A person who holds a county order, is a mere creditor *at large* of the county, and until judgment is rendered thereon, and execution returned unsatisfied, cannot, by injunction or otherwise, disturb the county in the exercise of its general right to dispose of its property.

APPEAL from the County Court for *La Crosse* County. The case is stated in the opinion of the court.

*Hugh & Alex. Cameron*, for appellant, contended that the orders held by the respondent were payable only out of the jail fund of the county, and that it did not appear from the complaint, how that fund was to be furnished with money to meet demands upon it, or how the respondent was injured by the payment of orders filed subsequently to his own. 2. The Code has not enlarged the power of the courts to grant permanent injunctions. *N. Y. Life Ins. Co. vs. N. Y. City*, 4 Duer, 192; *Neustadt vs. Joel*, 2 id., 530. 3. Courts will restrain a public officer by injunction only where his official acts, affecting the title to real estate, may result in irreparable injury to the freehold, or where such acts would lead to a multiplicity of suits. *Mayor, &c., of Brooklyn vs. Meserole*, 26 Wend., 132; *Wiggin vs. Mayor, &c., of N. Y.*, 9 Paige, 16; *Van Doren vs. the same*, id., 388; *N. Y. Life Ins. Co. vs. N. Y. City*, *supra*. 4. County orders are merely contracts of the county to pay as therein stated. A court of equity will not interfere to prevent a breach of such a con-

June Term,
1860.

MONTAGUE
v.
HORTON.

tract. *Weale vs. West Middlesex Water Works Co.*, 1 Jac. & Walk., 370. 5. The respondent was merely a *creditor at large* of the appellant, and as such not entitled to equitable relief. *Wiggins vs. Armstrong*, 2 John. Ch. R., 144; *Neustadt vs. Joel*, 2 Duer, 530; *Hastings vs. Belknap*, 1 Denio, 190; *Andrews vs. Durant*, 18 N. Y., 500.

*Angus Cameron* and *Abbott, Gregory, Pinney & Flower*, for respondent, contended that the orders described in the complaint were payable out of the general fund of the county, the words "for jail purposes" inserted therein being merely descriptive of the *purpose* for which they were drawn; and that the plaintiff's orders were entitled by law to payment before those subsequently presented. Sec. 129, chap. 13, R. S.; *Keep vs. Fraser*, 4 Wis., 224. 2. Secs. 1 and 2 of chap. 129, R. S., greatly enlarge the powers of the court in the granting of preliminary injunctions. *Cure vs. Crawford*, 5 How. Pr. R., 293; *Furniss vs. Brown*, 8 id., 59. 3. Courts of equity will sometimes protect a party by injunction, when he might maintain an action at law. *Furniss vs. Brown, supra*; *Goodrich vs. Moore*, 2 Minn., 61; *Douglas vs. Wiggins*, 1 John. Ch. R., 435; 2 Eden on Inj., 341–2. The complaint in this case makes a proper case for granting relief by injunction. 1 Eden on Inj., 337; *In re Hemiup*, 2 Paige, 316; *Cure vs. Crawford, supra; Bruce vs. Del. & Hud. Canal Co.*, 19 Barb., 371. The court will restrain a public officer by injunction when his official acts will lead to a multiplicity of suits. An action may be maintained on each order (*Savage vs. Supervisors of Crawford Co.*, 10 Wis., 49), and it is alleged in the complaint, and admitted by the demurrer, that the plaintiff's orders will remain unpaid unless the injunction should be granted.

October 22.

*By the Court*, DIXON, C. J. The record in this case embraces two appeals from two orders, made by the county court of the county of La Crosse. · One was an order overruling the appellant's motion for an order to dissolve an order for a temporary injunction, which had previously been made in the case, upon the facts set forth in the complaint, accompanied by a verification in the usual form, and the other

an order overruling the appellant's demurrer to the complaint. The causes of demurrer assigned, were : First, that it appeared on the face of the complaint that the court had no jurisdiction of the action; and, second, that the complaint did not state facts sufficient to constitute a cause of action. The complaint is somewhat lengthy, but the facts alleged in it, and which are necessary for a proper understanding of the questions raised, may be comprehended in a few words. The appellant is the treasurer of the county of La Crosse, and the respondent the owner of sundry orders issued by the proper authorities of that county, and which are evidences of an indebtedness from the county to him as the holder, in the several sums therein specified. These orders, which are ten in number, and amount in the aggregate to the sum of $700, were issued in the months of March, June, July and August, 1859, to one Alexander W. Shepard, or bearer, and are in the usual form of such instruments, except that the treasurer of the county, to whom they are directed, is required to pay them out of the unappropriated money belonging to the county for jail purposes. The complaint shows that they were all presented for payment, and payment demanded of the defendant, as such treasurer, on or before the 2d day of December, 1859, and that, payment thereof having been refused, they were severally, on and before said last mentioned day, placed on file with the treasurer, and thus remained until the time of the commencement and hearing of this action. It further appears that no part of the money due upon them has ever been paid or offered to the respondent. It is not averred that there were, at the time such orders were so presented for payment, nor that there have been at any time since they were so placed on file, any moneys in the hands of the respondent which were properly applicable to their payment and liquidation; but it is alleged as a reason why no such moneys have come into his hands as treasurer, and as a substantive ground or cause for maintaining this action, that the appellant, as treasurer, has, during the time said orders have so been on file, been guilty of certain continued acts of official misconduct or malfeasance, which have resulted in preventing the receipt

of the ordinary income and revenue of the county, and in keeping the treasury continually empty. This misconduct is charged to have occurred in this wise. It is said that at the time of making the complaint, the treasurers of the several towns had made return to the county treasurer, of the delinquent taxes in their respective towns, assessed in the year 1859, and that those taxes, so assessed and returned, and then in the hands of the county treasurer for collection, amounted to at least $9,000. It is also said that large quantities of land in said county were sold by the treasurer thereof, in the years 1857, 1858 and 1859, for the delinquent or unpaid taxes assessed thereon for the year preceding such sales respectively, and that of such lands a large portion was bid off by and in the name of the county, and certificates thereof issued to the county, and that of such certificates a large number were owned and held by the county at the time of the filing of the respondent's said orders, and that many of them were still, at the time of the institution of this suit, so held and owned. The plaintiff then proceeds to allege, by way of laying the foundation for a perpetual as well as a temporary injunction, that the principal or only sources of revenue of said county, by which its treasury can be replenished and the necessary funds accumulated therein, with which to pay his said orders, are the moneys which are due and unpaid to it for said taxes and upon such tax certificates; but that the defendant, as such treasurer, instead of demanding and receiving the cash in payment of such delinquent taxes, so far as the same were levied and assessed for county purposes, and instead of requiring a like cash payment upon the redemption, sale or transfer of such certificates of sale, has been in the habit, during all the time said orders have so remained on file, and still is in the habit and practice, from day to day, and week to week, and so often as he is applied to for that purpose, of receiving such payments in the outstanding, unfiled orders of said county, without regard to the date or time of their issue, or the purposes for which they were given; and that, in pursuance of such practice, he has so received in payment many orders of like tenor and effect of those held by the plaintiff, and which were

issued to the said Alexander W. Shepard, and which were never otherwise presented for payment, or placed on file with him. The complaint closes with a prayer for a temporary injunction, and that on the final hearing a perpetual injunction may be awarded, restraining the defendant, his agents, attorneys, counsellors, deputies, successors, &c., from receiving such outstanding unsatisfied orders in payment of any part of said delinquent taxes, or in redemption, or for the transfer or sale, of said tax certificates, until moneys sufficient to satisfy the orders of the plaintiff, according to their dates and priority of filing, shall have been paid and received into the treasury of said county.

The first objection of the appellant's counsel, that the orders described in the complaint are drawn payable out of a particular fund, viz: the unappropriated money belonging to the county for jail purposes, and that therefore the promise to pay is contingent upon the sufficiency of that fund, seems to me not to be well taken. Upon examination of the statute, I find no authority for the creation of separate or distinct funds out of the revenues or moneys belonging to the county. By law all money belonging to the county as such, and not coming into its hands in the capacity of trustee, is treated as one fund, out of which all its liabilities are to be discharged. This intention is most plainly indicated by the provisions of sec. 129, chap. 13 of the Revised Statutes, which provides that "county orders properly attested," (thereby, of course, meaning and including all county orders), "shall be entitled to a preference as to payment according to the order of time in which they may be presented to the county treasurer," except that where two or more orders are presented at the same time, that shall be first paid which is of the oldest date; and provided that the county treasurer shall receive from town treasurers all county orders issued by said county, in payment of the county taxes collected in such town by the town treasurer, in the year for which such orders are offered in payment. If it be conceded that the instruments in question are the orders of the county of La Crosse—and this was not denied or disputed—then I do not see how, under the operation of this section, their payment, according to the

June Term,
1860.

MONTAGUE
v.
HORTON.

order fixed by it, and out of any funds properly belonging to the county, could well be refused. It could only be done on the hypothesis, which was not claimed or insisted upon, that the addition of the words "*for jail purposes*," destroyed their character and existence as orders. There being no authority to establish a separate fund, and these orders being payable, if at all, out of the general fund, those words must be understood, not as a limitation upon the liability of the county, but as descriptive of the purpose for which the order was drawn, and as introduced, in order the better to enable the officers of the county to regulate and adjust its financial affairs.

Upon the question of the jurisdiction of a court acting as a court of equity, to grant a permanent injunction in a case like the present, where such injunction is the only relief demanded in the complaint, it seems to me very clear, if the court is to be governed by the law as it existed and was administered prior to the adoption of the Code of Procedure, that it has no such power or jurisdiction. By the law as it then stood, it was well settled that a court of chancery would interfere, by injunction or otherwise, to restrain or control the proceedings of subordinate tribunals, or the official acts of public officers, in but two instances. The one was where such proceedings or acts affected real estate, and would lead to irreparable injury to the freehold, or to the creation of a cloud upon the title, which the court, if called upon, would remove; and the other, where they would lead to a multiplicity of suits. In the one case the court would interfere to stay the mischief; and in the other, to avoid vexatious and excessive litigation. *Mayor of Brooklyn vs. Meserole*, 26 Wend., 132. It is very evident that the present case falls within neither of these heads of equitable jurisdiction. In the case of *Mooers vs. Smedley*, 6 John. Ch. R., 28, where a bill was filed to enjoin the collector of a town from collecting a tax, and the supervisor from paying over the same when collected, on the ground that the board of supervisors had levied it in direct violation of law, Chancellor KENT observed : "I cannot find, by any statute, or precedent, or practice, that it belongs to the jurisdiction of chancery, as a

court of equity, to review or control the determination of the supervisors, in their examination and allowance of accounts as chargeable against their county, or any of its towns," but that "the review and correction of all errors, mistakes and abuses in the exercise of the powers of subordinate public jurisdictions, and in the official acts of public officers, belongs to the supreme court. In my opinion, it belongs exclusively to that court. It has always been a matter of legal and never a matter of equitable cognizance;" and that "in the whole history of the *English* court of chancery, there is no instance of the assertion of any such a jurisdiction as is now contended for." See also *Wiggin vs. The Mayor*, 9 Paige, 16; and *Van Doren vs. Same*, id., 368.

Upon the point that the Code has not enlarged, or in any respect changed, the power of the court to grant injunctions in cases of this kind, I am equally well satisfied. The only provision from which any such enlargement or change can be claimed, is that found in section 2 of chap. 129 of the Revised Statutes, transcribed from sec. 219 of the Code of New York, and is in these words: "Where it shall appear by the complaint, that the plaintiff is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission or continuance of some act, the commission or continuance of which, during the litigation, would produce injury to the plaintiff; or where, during the litigation, it shall appear that the defendant is doing, or threatens, or is about to do, or procuring or suffering some act to be done, in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual, a temporary injunction may be granted to restrain such act. And when, during the pendency of an action, it shall appear by affidavit, that the defendant threatens, or is about to remove or dispose of his property, with intent to defraud his creditors, a temporary injunction may be granted to restrain such removal or disposition." It is very clear that the remedy here given, and which is extended to all actions, whether they be such as were heretofore denominated legal or equitable, is temporary and provisional in its nature, and designed to pass away when the litigation itself ceases by the rendition of a final

June Term,
1860.

MONTAGUE
v.
HORTON.

judgment in the action. It is also clear, that no new or enlarged rights are conferred upon the plaintiff, but that it only enlarges the powers of the courts to grant injunctions, in cases where, by the complaint, it appears that he is entitled to the relief demanded. In determining whether he is entitled to such relief, or whether or not he sets forth a good cause of action, we are to look to the law as it was previously understood and expounded. The legislature have not attempted to change or modify the law which fixed and governed the right, but that which concerned the remedy only. And if, by the law as heretofore established, the plaintiff had not the right to a perpetual injunction in a case like the present, then he has not now. Nor does the fact, that by the Code all distinction between the forms of legal and equitable proceedings has been abolished, and that they have been blended into one general, harmonious system, nor that the legal and equitable powers are now united in, and exercised by, the same courts, at all affect the question. In so doing the legislature has not obliterated or destroyed the limits which were heretofore set to those powers, and by which they were distinguished and defined, and their exercise circumscribed. We cannot therefore substitute an equitable for what was heretofore purely a legal remedy, or the opposite. We cannot make the writ of injunction perform the functions of a mandamus or action on the case.

The objection that the plaintiff is merely a creditor at large, or before judgment, of the county of La Crosse, and therefore not entitled to the interference of the court by injunction, is, in my opinion, equally fatal to the present proceeding. The authorities cited by the appellant's counsel to this point, abundantly establish, that before judgment and execution issued and returned unsatisfied, such general creditor cannot in this manner question or control the debtor's disposition of his property, upon the ground of fraud or otherwise. He must complete his title at law, by judgment and execution, before he can interrupt the debtor's general rights to dispose of and control his property. In respect to the powers of a court of equity, the county, in the absence of any inconsistent statutory regulations, would occupy the

same position as a natural person, and although it might be inequitable and unlawful for it to violate or disregard the preferences given by statute, that court could not interfere. The plaintiff must resort to the remedies given by law.

Both the orders of the county court must be reversed, and the cause remanded for further proceedings in accordance with this opinion.