Filed March 20, 1885.

No. 11,899.

## TRAYLOR v. THE STATE.

CRIMINAL LAW.—*Abortion.*—*Indictment.*—*Duplicity.*—Where an indictment is not entirely formal in all its parts, but may be construed as merely averring specifically that the death of the woman was caused by the efforts of the defendant to procure an abortion, such indictment is not bad for duplicity in charging abortion and also involuntary manslaughter in the same count.

SAME.—*Evidence.*—*Order of Proofs.*—*Corpus Delicti.*—To sustain a criminal charge, proof of two distinct propositions must be made, first, that the act constituting the essence of the offence was done, and, second, that it was done by the person charged. In regular order, evidence tending to implicate the party on trial ought not to be introduced until the principal fact, the *corpus delicti*, has been established, and to sustain a conviction it ought to be proved beyond a reasonable doubt.

SAME.—In a prosecution for procuring an abortion resulting in the death of the pregnant woman, it is the procurement of the miscarriage that constitutes the *corpus delicti*.

From the Pike Circuit Court.

*F. B. Posey, J. W. Wilson, W. R. Gardner* and *S. H. Taylor*, for appellant.

*F. T. Hord,* Attorney General, *E. A. Ely* and *W. F. Townsend*, for the State.

NIBLACK, J.—This was a prosecution for procuring an abortion, which resulted in the death of the pregnant woman. R. S. 1881, section 1923. The indictment was in two counts.

The first charged that "Thomas Traylor, on the 30th day of September, 1883, at and in the county of Pike, and State of Indiana, did then and there, unlawfully, feloniously and wilfully, employ and use a certain instrument, to the grand jurors unknown, in and upon one Anna Poe, who was then and there a woman pregnant with child, and did then and there, unlawfully, feloniously and wilfully, introduce said instrument into the womb of the said Anna Poe, with intent then and there, and thereby, to procure and produce the miscarriage of the said Anna Poe, the said Thomas Traylor then and there well knowing that said use of said instrument would produce such miscarriage, and it not being necessary then and there to produce such miscarriage for the preservation of the life of the said Anna Poe, by reason whereof the said Anna Poe languished until the 1st day of October, 1883, and then and there died. And so the grand jurors aforesaid, on their oath aforesaid, do charge and present that the said Thomas Traylor, in manner and form and by the means aforesaid, did then and there, unlawfully and feloniously, kill and murder her, the said Anna Poe.

The second count was in its averments substantially similar to the first, except that it charged Traylor with having administered to Anna Poe a certain noxious substance, to the grand jurors unknown, for the purpose of procuring and producing her miscarriage.

Verdict, finding the defendant guilty as charged, assessing a fine of $250 against him and directing that he be imprisoned in the State's prison for the period of seven years. Motions for a new trial and in arrest of judgment were severally overruled, and judgment on the verdict.

The first question made here is upon the sufficiency of the indictment upon the motion in arrest of judgment. In opposition to its sufficiency, it is argued that both counts contained, first, a distinct charge of using unlawful means to procure a miscarriage, and, second, an allegation of facts

constituting the crime of involuntary manslaughter, and hence that both were bad for duplicity.

The indictment was not entirely formal in all its parts, and in its structure was somewhat anomalous, but we do not regard either count as having been bad for duplicity. As we construe the concluding paragraphs of both counts, they amounted only to mere specific averments that the death of Anna Poe resulted from the respective efforts of Traylor to procure her miscarriage, and consequently not to charges of involuntary manslaughter, within the purview of section 1908, R. S. 1881. *Montgomery* v. *State,* 80 Ind. 338 (41 Am. R. 815); *Wood* v. *State,* 92 Ind. 269; *State* v. *Barker,* 28 Ohio St. 583.

The next question made for our decision is upon the alleged insufficiency of the evidence to sustain the verdict. It was shown by the evidence that Anna Poe at the time of her death was an unmarried woman about twenty-three years old; that Traylor was an unmarried man and had been much in the company of, and apparently a suitor to, Anna Poe for the preceding two or three years; that in the afternoon of Sunday, the 30th day of September, 1883, they rode out together in a buggy for probably two hours, returning about dark; that Traylor remained all night at Anna's father's house; that some time after midnight Anna was taken violently ill and was, not long afterwards, delivered of a fœtus indicating about seven months' advance in pregnancy; that excessive flooding ensued, from which she sank rapidly and died between eight and nine o'clock next morning; that a physician, who delivered her of the after-birth, reached her about a half an hour before she died; that the physician made no special examination of the person of his patient, but saw nothing to indicate that improper means had been used to produce a miscarriage; that an inquest was held upon the body, but no *post mortem* examination was made.

Traylor, as a witness in his own behalf, admitted that illicit relations between him and the deceased had existed for a year

or more before her death, and the circumstances generally pointed to him as the guilty party, conceding that the miscarriage was the result of some criminal misconduct. But as the evidence comes to us there was nothing either showing, or tending to show, that the miscarriage was caused by any artificial or unlawful means; on the contrary, the deceased told her physician, as a dying declaration, that nothing had been done to bring about her miscarriage, but that it had come on naturally. All others upon whom suspicion was sought to be cast denied all knowledge of anything having been either done or suggested calculated to produce the miscarriage of the deceased.

To sustain a criminal charge proof of two distinct propositions must be made : *First.* That the act constituting the essence of the offence was done. *Secondly.* That it was done by the person charged. In regular order, evidence tending to implicate the party on trial ought not to be introduced until the principal fact, known in legal parlance as the *corpus delicti*, has been established. 3 Greenl. Ev., sections 19, 30. The *corpus delicti* forms a distinct ingredient in a criminal prosecution, and must be established beyond a reasonable doubt. It has been held that even the confession of the prisoner can not safely be accepted as conclusive, until the *corpus delicti* has been ascertained.

Wharton on Criminal Evidence says : " The death in homicide should be distinctly proved, either by inspection of the body, or by other evidence strong enough to leave no ground for reasonable doubt. The test is applicable to all crimes." Whart. Crim. Ev., sections 324, 325.

The alleged unlawful procurement of the miscarriage of the deceased constituted the *corpus delicti* in this case, and hence formed an essential ingredient in the prosecution, which ought to have been proved beyond a reasonable doubt. 1 Greenl. Ev., section 217.

In the absence, therefore, of any evidence fairly tending to establish the *corpus delicti* in this prosecution, we are con-

State, ex rel. Hord, Att'y Gen., v. Board of Comm'rs of Washington Co.

strained to hold that the verdict was not sustained by suffi-
cient evidence.

The judgment is reversed, and the cause remanded for a
new trial.

The clerk will make the usual order for the return of the
prisoner to the custody of the sheriff of Pike county.

Filed March 14, 1885.