Hauk *v.* The State.

## HAUK *v.* THE STATE.

[No. 18,054.   Filed Feb. 16, 1897.   Rehearing denied June 11, 1897.]

VENUE.—*Change Of.*—*Criminal Law.*—*Discretion of Court.*—*Statute Construed.*—A change of venue in a criminal action, not punishable by death, under the provisions of section 1840, Burns' R. S. 1894 (1771, R. S. 1881), is left to the sound discretion of the trial court, and it must affirmatively appear that such discretion has been abused to the injury of the complaining party in order to secure a reversal on appeal.   *p. 243.*

CRIMINAL LAW.—*Plea in Abatement.*—*Objection to Grand Jurors.*—No error was committed by the trial court in sustaining a demurrer to a plea in abatement, interposed by defendant in a criminal cause, on the grounds that the grand jurors who returned the indictment were prejudiced against defendant, such plea giving as an excuse for not interposing such objection by challenge before the grand jury was sworn as provided by section 1752, Burns' R. S. 1894 (1656, R. S. 1881), that at the time the grand jury was in session and when the indictment was returned defendant was in jail and had no opportunity to challenge said grand jury, where it is not shown that defendant was in jail at the time the grand jury was sworn or impaneled, or that he attempted in any way to avail himself of his right of challenge at the proper time.   *pp. 244, 245.*

JURISDICTION.—*Criminal Law.*—*Where Offense is Committed Partly in One County and Partly in Another.*—*Abortion.*—*Statute Construed.*—Under the provision of section 1649, Burns' R. S. 1894 (1580, R. S. 1881), that "where a public offense has been committed partly in one county and partly in another, or the act or effects constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county." a person charged with procuring an abortion may be indicted and tried in the county in which the woman miscarried and died, although the acts of defendant producing the miscarriage and death were done and committed in another county.   *pp. 245–248.*

INDICTMENT.—*When not Bad for Duplicity.*—*Abortion.*—*Criminal Law.*—An indictment for abortion which charges both miscarriage and death is not bad for duplicity.   *p. 248.*

TRIAL.—*Criminal Law.*—*Failure of Court to Require State to Elect Upon Which Count of Indictment it Would Ask for Conviction.*—No error was committed in not requiring the State to elect upon which count of an indictment it would ask for a conviction in the

Hauk *v.* The State.

trial of a criminal cause, where the court withdrew all of the counts but one from the consideration of the jury, and submitted the question of defendant's guilt to them upon that one alone.  *p. 248.*

VENUE.—*Change of Judge.—Appointment of Special Judge.—Discretion of Court.—Statute Construed.*—Under section 1839, Burns' R. S. 1894 (1770, R. S. 1881), in all cases upon a change from the presiding judge, where in the opinion of the court it shall be difficult to procure a regular judge to try the cause, the right to appoint some disinterested attorney of the State in good standing, is wholly within the discretion of the court, and will not be interfered with on appeal, unless it affirmatively appears that the court has abused such discretion to the prejudice of the substantial rights of the complaining party.  *pp. 248, 249.*

JURY.—*Special Venire.—Criminal Law.—Statute Construed.*—Under section 1894, Burns' R. S. 1894 (1388, R. S. 1881), the court has the right to order a special venire to serve as jurors in the trial of a criminal cause.  *p. 249.*

EVIDENCE.— *Confession.— Admission Of, on Trial of Accused.*—The question to be determined in the admission in evidence of a written confession made by the accused is whether there had been any threats made in obtaining such confession of such a nature as to cause defendant to state that which was false from fear of such threats.  *pp 249-252.*

SAME.—*Weight Of.—Admission in Evidence of a Confession Made by Defendant.*—This court will not weigh the evidence given in the trial court upon the competency of the admission in evidence of a written confession made by defendant, or attempt to reconcile conflicts therein, where there is evidence introduced which well and fully supports the decision of the court.  *pp. 252, 253.*

CRIMINAL LAW.—*Instruction.—Abortion.—Statute Construed.*—In the trial of a person charged with procuring an abortion an instruction to the jury, that, if the abortion was procured as alleged in the indictment, the offense was complete without regard to the fact as to whether or not death resulted from such unlawful act, stated the law correctly, notwithstanding the indictment charged both miscarriage and death as the consequences of the criminal acts alleged, as either miscarriage or death completes the offense, under the provisions of section 1996, Burns' R. S. 1894 (1923, R. S. 1881).  *p. 253.*

INSTRUCTION.—*Reasonable Doubt.—Not Applicable to Subsidiary Evidence.*—An instruction in the trial of a criminal cause, that "the doctrine of reasonable doubt, as a rule, has no application to mere matters of subsidiary evidence, taken item by item, but is applicable always to the constituent elements of the crime charged," states the law correctly as it is to the material facts and not to the mere items of subsidiary evidence which may aid in proving the essential facts that the rule of reasonable doubt applies.  *pp. 254. 255.*

Hauk *v.* The State.

SAME.— *Evidence.— Confession.— Criminal Law.*—Where a written confession of defendant in the trial of a criminal cause was admitted in evidence, an instruction to the effect that such a confession was subject to mistakes that might arise from the misunderstanding of the meaning of the words used by the defendant, or by using words not used by the defendant, or by substituting the language of the person writing the confession for that of the defendant was properly refused as an invasion upon the province of the jury. *pp. 257, 258.*

SAME.—*Evidence.—Confession.*—An instruction, that if the jury believed that a certain part of defendant's confession admitted in evidence in the trial of a criminal cause was false, then such confession might be disregarded entirely, was properly refused. *p. 258.*

SAME.— *Evidence.— Confession.— Competency of, a Question for the Court.*—Instructions seeking the submission to the jury of the competency of a written confession, made by defendant and admitted in evidence in the trial of a criminal cause, was properly refused for the reason that such question was a preliminary one to be determined by the court, and such question having been settled and passed upon by the court in the admission in evidence of such confession, defendant was not entitled to have such question submitted to the jury for its decision. *pp. 258, 259.*

EVIDENCE.—*Order of Admission.—Criminal Law.— Abortion.*—In the trial of a person charged in procuring an abortion resulting in death, evidence by a physician who made a *post mortem* examination of the body of the deceased as to the manner in which the miscarriage was produced, properly preceded proof of the *corpus delicti*, as such evidence tended to prove the *corpus delicti. pp. 259, 260.*

SAME.—*Competency of Physician to Testify as to Facts Obtained in His Professional Business.—Criminal Law.—Abortion.*—In the trial of a charge of abortion resulting in death, evidence by the physician who attended deceased, and who was present as her physician when the miscarriage occurred, as to what he discovered upon an examination of the patient during such attendance, is not prohibited by section 505, Burns' R. S. 1894. *pp. 260, 261.*

SAME.—*Character of Witness.—Not Confined to Present Residence.*— The inquiry as to the reputation of a witness is not necessarily confined to his present residence, but may be traced back to his former residence where he had lived fifteen months before. *pp. 261, 262.*

SAME.—*Abortion.—Letter Written by Deceased Before the Commission of the Offense not Admissible.*—A letter written by deceased several days before an abortion was committed, resulting in her death, which tended to show that she herself had attempted to produce the miscarriage, was not admissible in evidence in the trial of a person charged with aiding in procuring such abortion. *pp. 262, 263.*

From the Montgomery Circuit Court. *Affirmed.*

*Clodfelter & Davis* and *George P. Haywood*, for appellant.

*W. A. Ketcham*, Attorney-General, *Merrill Moores, Dumont Kennedy*, and *Thomas & Whittington*, for State.

JORDAN, C. J.—Appellant and one William R. Stout were jointly indicted by the grand jury of Montgomery county for the crime of producing an abortion. The defendant Stout severed, and appellant was alone tried and convicted, and over his motion for a new trial he was sentenced in accordance with the verdict of the jury to pay a fine and be imprisoned in the State prison for a term of five years. The indictment contains three counts, but the court in its instructions confined the jury in their deliberations to the second count by instructing them that under the evidence there could be no conviction upon the first or third, and the verdict discloses that the jury found appellant guilty as charged in the second count of the indictment, hence all questions relating to the first and third counts may be considered as properly eliminated from the case.

Appellant in his motion for a new trial assigned one hundred and four reasons for setting aside the jury's verdict, and his learned counsel in their brief seek to present numerous alleged erroneous rulings upon the part of the lower court. The prosecution is based upon section 1996, Burns' R. S. 1894 (1923, R. S. 1881), which is as follows:

"Whoever prescribes or administers to any pregnant woman, or to any woman whom he supposes to be pregnant, any drug, medicine, or substance what-

ever, with intent thereby to procure the miscarriage of such woman, or, with like intent, uses any instrument or means whatever, unless such miscarriage is necessary to preserve her life, shall, if the woman miscarries or dies in consequence thereof, be fined not more than five hundred dollars nor less than fifty dollars, and imprisoned in the state prison not more than fourteen years nor less than three years."

The second count of the indictment reads as follows:

"And the grand jurors aforesaid, on their oaths aforesaid do further present that one William R. Stout and one Philip Hauk, on the 18th of January, 1896, at and in Fountain county, and State of Indiana, did then and there unlawfully, feloniously and willfully use a certain instrument and substance to the grand jurors unknown, in and upon the body and womb of Grace McClamrock, who was then and there a pregnant woman, by then and there unlawfully, feloniously, and willfully introducing said instrument and substance into the body and womb of the said Grace McClamrock with the intent then and there and thereby to procure the miscarriage of the said Grace McClamrock, the said William R. Stout and the said Philip Hauk then and there well knowing that the said Grace McClamrock was then and there a pregnant woman, and the said Grace McClamrock in consequence thereof and by said use of said substance and instrument as aforesaid, did, on the 20th day of January, 1896, at and in the county of Montgomery and State of Indiana, miscarry; and the said Grace McClamrock in consequence thereof, and by said use of said instruments and substance, and in consequence of said miscarriage, did, on the 24th day of January, 1896, at and in the said county of Montgomery and State of Indiana, die; said miscarriage not being then

and there necessary to preserve the life of the said Grace McClamrock."

We will address our inquiry to the several rulings or decisions of the court, upon which counsel for appellant insist upon a reversal, in the order in which they have been presented in their brief. Appellant applied for a change of venue to another county, basing his application therefor upon the alleged grounds that he could not secure a fair and impartial trial in Montgomery county on account of the excitement, bias and prejudice existing therein against him and his cause of defense. He filed in support of his said application the affidavits of nine persons. The State resisted the change and in support of its resistance filed the affidavits of sixteen persons, all tending to disprove that any excitement, bias or prejudice existed in the county against the appellant that would prevent him from having a fair and impartial trial therein.

It was shown that some of the affiants whose affidavits were produced by the State, had but recently been in all parts of the county, and from their conversations and intercourse with its citizens had an opportunity to familiarize themselves relative to the facts about which they deposed. The court denied this application, and this, counsel for appellant urge, was an abuse of a sound judicial discretion. A change of venue in a criminal action, not punishable by death, by the provisions of section 1840, Burns' R. S. 1894 (1771, R. S. 1881), is left to the sound discretion of the trial court, and under a firmly settled rule, it must affirmatively appear upon appeal, that this discretion has been abused to the injury of the complaining party, in order to avail the latter in securing a reversal. *Walker* v. *State*, 136 Ind. 663; *Reinhold* v. *State*, 130 Ind. 467. Under the facts, we cannot affirm that

such abuse of discretion upon the part of the lower court in overruling the motion for a change appears, and therefore there is no available error upon the court's ruling in this respect.

Appellant sought to abate the action against him upon the grounds, alleged in his plea of abatement, that such a state of mind existed upon the part of each of the grand jurors who returned the indictment in the cause as incapacitated each of them from acting in the matter impartially and without prejudice to his substantial rights. As an excuse for not interposing this objection to the grand jurors by challenge before they were sworn as provided in section 1725, Burns' R. S. 1894 (1656, R. S. 1881), it appears in substance, by the averments of the plea, that at the time the grand jury was in session, and at the time they found and returned the indictment, appellant was confined in the county jail upon the charge, and had no opportunity to challenge said grand jury, and, by being incarcerated in jail, he was prevented from so doing; that he was wholly without means to obtain counsel, and was dependent on his friends for assistance, and, at the time the indictment was returned, he was ignorant of the law which permitted him to exercise the right to challenge the said jury or any member thereof. Section 1725 (1656), *supra*, gives to any person held to answer to the charge of a felony or misdemeanor the right to challenge, before the grand jury is sworn, any member thereof, for certain enumerated causes, the seventh cause mentioned being substantially that such a state of mind exists upon the part of the jurors relative to the accused that they cannot act in his case impartially and without prejudice. A demurrer upon the part of the State was sustained to the plea, and this, it is contended, was error. Challenges to the poll of a grand jury under this section

by a person. held to answer a criminal charge must be made before the jury is sworn, and, in general, the objection is waived by a failure to assert it at the time prescribed by the statute. It is true that a party charged with a crime may at the time the grand jury is impaneled be placed under such circumstances as will excuse him from availing himself of his right to challenge or object to the jurors at that time, and for this reason be permitted thereafter to exercise it by way of a plea in abatement to the indictment. This is recognized by the decisions of this court. *Mershon* v. *State*, 51 Ind. 14; *McClary* v. *State*, 75 Ind. 260. The law, however, does not favor pleas in abatement, and no presumptions are indulged in their favor, but they are required to be certain, and must state every fact necessary to uphold their sufficiency. *Mershon* v. *State*, *supra*. Tested by this rule, and the insufficiency of the plea in controversy is apparent. It is not shown by any facts therein alleged that the defendant was in jail at the time the grand jury was sworn or impaneled, but it is averred that he was in jail at the time *the grand jury was in session and when they found and returned the indictment*. It might be true that appellant was in custody at the time the jury was in session and when the indictment was returned, and still he might have been on bail or had counsel when the grand jury was sworn, and had ample opportunity at that time to assert his right of challenge. There are no facts averred in the plea showing affirmatively that appellant either attempted in any way to avail himself of his right of challenge, or that he was prevented by any circumstances from doing so at the proper time. The court therefore properly sustained the demurrer to the plea in abatement.

The next insistence is that the count of the indictment upon which appellant was convicted discloses

that the offense was committed in Fountain county, and consequently the original jurisdiction thereof was, under the law, lodged in the Fountain Circuit Court, and upon this ground it is contended that appellant's motion to quash this count should have been sustained. The learned counsel appearing in behalf of the State concede that, under the general rule, jurisdiction of the grand jury to return the indictment, and of the court to try the accused, is confined to the particular county wherein the crime was committed, but they claim that under the facts alleged and also as proven upon the trial, that jurisdiction over the alleged offense is controlled by section 1649, Burns' R. S. 1894 (1580, R. S. 1881), which is as follows: "Where a public offense has been committed partly in one county and partly in another, or the act or effects constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county." In *Archer* v. *State*, 106 Ind. 426, this court, in construing this section of the criminal code, affirmed its constitutional validity, and held that under the facts in that case, which disclosed that a conspiracy to commit murder was formed in one county and the victim was seized and bound therein, and then taken into another county and killed, that jurisdiction of the offense was in either county. The court, per Elliott, J., there said: "Where the crime is composed of several elements, and a material one exists in either one of two counties, the courts of either county may, under our statute, righfully take jurisdiction of the entire crime."

The question was thoroughly considered in the Archer case, and many authorities cited in support of the holding. In the appeal of the *State* v. *Pauley*, 12 Wis. 599, it was held under a statute of that state providing that where a mortal wound is given in one

county and in consequence thereof death ensues in another, that the offense may be prosecuted in either county. The court there affirmed that where the mortal blow is struck in one county and death results therefrom in another, that the proper court in either county, which first takes cognizance of the crime, will retain exclusive jurisdiction. In the course of the opinion, it was said: "The offense of manslaughter did not consist of the mere shooting and wounding of the deceased. On the contrary, the causing of his death was the most material element of the offense, and this did not take place there. The blow was struck in one county and its effect was produced in another."

These authorities support the principle contended for by the State that within the contemplation of section 1649 (1580), *supra*, jurisdiction over a crime exists where any one or more of its substantive and material parts are committed. The inquiry then is, what are the essential elements which are required to exist or be present in order to constitute the offense defined by section 1996, Burns' R. S. 1894 (1923, R. S. 1881), upon which this prosecution is based, and did any of these elements of material parts exist, or occur in Montgomery county, as shown by the averments in the indictment? It is evident, we think, that the crime charged against appellant does not alone consist of merely prescribing for, or administering the drug, medicine, or substance to either the pregnant, or supposed pregnant woman, with the intent to procure a miscarriage, or by using some instrument or other means with a like intent. Miscarriage or death of the woman must result as a consequence of the unlawful antecedent act or acts done or perpetrated by the accused with the intent to procure the abortion, or no crime under the statute is committed.

Miscarriage or death, as the case ·may be, crowns the offense, and constitutes a material part thereof. The indictment charges that Grace McClamrock, the woman upon whom the alleged crime was perpetrated, in consequence of the use of the instrument and substance, miscarried and died in Montgomery county. Either of these facts is a material part of the offense, which when combined with those averred to have occurred in Fountain county, constitute the crime in its entirety. It must follow, then, that, under the cases cited, the offense charged was partly committed in each of the counties mentioned, and in accordance with section 1649 (1580), *supra,* jurisdiction was lodged in the circuit court of either, and appellant, therefore, was rightfully indicted and tried in Montgomery county.

The indictment is not bad for duplicity for the reason insisted by counsel, that it alleges both miscarriage and death. *Rhodes* v. *State,* 128 Ind. 189, 25 Am. St. 429.

It is next urged that the court erred in not requiring the State to elect upon which count of the indictment it would ask for a conviction. But it appears the court withdrew all the counts except the second from the consideration of the jury, and submitted the question of appellant's guilt to them upon that one alone; under such circumstances no available error could result from the action of the court in this respect. See *Mills* v. *State,* 52 Ind. 187.

A change of venue from the regular judge was obtained, and the latter being unable to secure some other judge to preside at the trial, appointed Hon. E. C. Snyder, who, as it appears, was a competent and disinterested attorney of the bar, to serve as a special judge in the case. The action of the court in appointing Judge Snyder is complained of by ap-

pellant. Under section 1839, Burns' R. S. 1894 (1770, R. S. 1881), in all cases upon a change from the presiding judge, where, in the opinion of the court, it shall be difficult to procure a regular judge to try the cause, the right to appoint some disinterested attorney of the State in good standing, is wholly in the discretion of the court, and on appeal we will not interfere with such discretion unless it affirmatively appears that the lower court has abused it to the prejudice of the substantial rights of the complaining party. *Kane* v. *State*, 71 Ind. 559; *Walter* v. *Walter*, 117 Ind. 247. The record does not disclose any abuse upon the part of the regular judge of the lower court in making the appointment in question.

Counsel contend that the court erred in ordering a special venire for fifteen persons to serve as jurors, whose names were drawn as provided by section 1453, Burns' R. S. 1894 (1388, R. S. 1881). This act of the court was authorized by this section of the statute, and it does not appear that appellant was thereby prejudiced in any of his rights. *Wood* v. *State*, 92 Ind. 269; *Merrick* v. *State*, 63 Ind. 327; *Heyl* v. *State*, 109 Ind. 589.

At the trial, what purports to be a written confession, made by appellant while in jail upon charge of the crime of which he was convicted, was offered in evidence by the State. This confession tended to implicate appellant and Doctor Stout, his co-defendant. Appellant objected to its introduction upon the ground, that it had been made under the influence of fear produced by threats, and asked to have the jury excused, and be permitted to introduce evidence to show such alleged facts to the court. The court excused the jury and heard evidence upon the part of both appellant and State, upon which it held the confession competent evidence, and over appellant's ob-

jections permitted it to be read to the jury. The docu-
ment embracing the confession in dispute was dated
at Covington, Indiana, January 27, 1896, being two
days after appellant's arrest on the charge in ques-
tion, and was signed by him. Therein it was stated
that accused "testified of his own free will and ac-
cord," and that he was the father of the child of which
Miss McClamrock had been prematurely delivered;
that on January 11, 1896, he had arranged with Dr.
Stout to produce an abortion on this woman, who at
that time, as he stated, was about three months ad-
vanced in pregnancy. He further said that on the
18th of said month he took Miss McClamrock to Dr.
Stout's office in Covington, and that she and the latter
went into an adjoining room, where the doctor oper-
ated upon her by passing some instrument into the
womb. The confession in question then proceeds to
detail what was said and done by appellant and Stout
at the office after this operation had been performed;
that the doctor gave the girl some morphine pills, and
told her to take them, to allay the pain, and directed
appellant that, in the event she was subjected to much
pain, to call some physician he could trust, but never
to divulge to any one that he, Stout, had produced
the abortion. Appellant offered himself as a witness
in support of his objections, and testified relative to
his arrest upon the charge on January 25, and how he
came to make the confession.

Much evidence was introduced before the court by
both the State and defendant relative to the question
under consideration. It appears from this evidence
that at the time the appellant made the confession in
controversy, he was confined in the county jail at Cov-
ington, upon the charge of which he was convicted;
that his father and some other friends were present at
the jail, together with the county coroner; that he was

urged by his father and the others to "tell the truth about the whole matter and keep nothing back;" that, after some other talk of a similar character had taken place, the appellant slapped one of the parties upon the knee and said, "I am going to tell it all." Upon this being said, his father went to him and replied: "I am glad of this, my boy," and then passed out into the jail corridor.

Appellant then orally stated what he claimed to be his and Dr. Stout's connection in producing the miscarriage of Grace McClamrock, and at the suggestion of the coroner the statement was reduced to writing, and appellant, after reading it over, and making some changes, signed it. Witnesses testify that, after the accused had signed the paper, he appeared bright, and said: "I feel better than I ever did in my life." There is evidence also tending to show that prior to the defendant's confession, but after he had been arrested and committed to jail, that he had been informed that much excitement existed upon the part of the public, and he might expect a crowd to come to the jail any hour; that if he would tell what connection Stout had in procuring the abortion he would "be let off," if not he would be sent to prison for twenty years, and that his mother and sister would be implicated and arrested. There is also evidence tending to show that appellant, at the time he made the confession, was nervous and in grief over the death of Miss McClamrock.

Appellant, as we have seen, challenged the compentency of the confession as evidence, upon the statutory ground that it was involuntarily made, under the influence of fear produced by threats, and, therefore, under section 1871, Burns' R. S. 1894 (1802, R. S. 1881), was not admissible as evidence. There was nothing contained in this written confession disclosing that

it was not voluntarily made; in fact, it contained the statement that it was made by the appellant of his ·"own free will and accord," and it was attested by his own signature. It was *prima facie* competent. A confession by a person accused of a crime is presumed to be voluntarily made until the contrary is shown. The accused asserted that it was involuntary, being made under fear produced by threats. Under the circumstances the burden of proving this fact rested upon him. *Brown* v. *State*, 71 Ind. 470; *Rufer* v. *State*, 25 Ohio St. 464; Wharton's Crim. Ev. (9th ed.), sections 319 and 320; *State* v. *Patterson*, 73 Mo. 695; *Commonwealth* v. *Culver*, 126 Mass. 464; *People* v. *Barker*, 60 Mich. 277, 27 N. W. 539; *State* v. *Hopkirk*, 84 Mo. 278; *State* v. *Meyers*, 99 Mo. 107, 12 S. W. 516.

The real question presented for the court to determine from all the evidence adduced was whether there had been any threats of such a nature that the defendant would be likely to state that which is false, from the fear of the threat. Gillett Crim. Law, section 857, and authorities there cited; Wharton's Crim. Ev., section 658. This fact appearing to the satisfaction of the court would exclude the confession as evidence, under the provisions of section 1871 (1802), *supra*.

We have carefully read the evidence given upon the point involved, and when considered as an entirety, as it must be, we are of the opinion that it does not appear that the appellant, in making the confession in question, did so involuntarily, through fear, resulting from threats. The court, therefore, did not err in overruling appellant's objections, and the confession was properly admitted for the consideration of the jury. *People* v. *McGloin*, 91 N. Y. 241, and cases cited; *State* v. *Patterson*, *supra*. Again, upon another view of the question, the competency of this confession as evidence against appellant was made an issue before the

trial court for its determination, and as there is evidence introduced which well and fully supports its decision in holding the confession to be competent, we are not authorized to weigh the evidence given upon the point involved, or attempt to reconcile any conflict therein, but, under a well settled rule, we are required to sustain the finding thereon of the lower court. *Keyes* v. *State*, 122 Ind. 527; *Smith* v. *State*, 142 Ind. 288.

The court, on its own motion, gave twenty instructions to the jury, which, when considered as a whole, correctly advised them upon the law relative to the questions involved. Appellant criticises some of these charges, and we will specifically review those in dispute. The fourth instruction simply stated the facts essential to give the court of Montgomery county jurisdiction over the offense, and, in substance, is in harmony with our holding herein, upon that point. The sixth charge of the court is condemned by counsel for appellant upon the ground that it was not proper to inform the jury, as it did substantially, that, if the abortion was procured as alleged in the second count of the indictment, the offense was complete without regard to the fact that the death of Grace Mc-Clamrock resulted from the abortion or improper treatment of the attending physician in her sickness. If the miscarriage was produced by the unlawful antecedent act of the appellant, as charged, then, under the statute, the offense was complete; and the fact that her death may have resulted from the improper treatment of her physician or otherwise, would not operate to defeat his conviction. The indictment, it is true, charged both miscarriage and death as the consequences of the criminal acts alleged, but it was not incumbent upon the State to establish both facts in order to convict, as by the provisions of the statute

either miscarriage or death as a result completes the offense.

The 8th, 9th, 10th, 11th, and 12th instructions relate to what constituted a reasonable doubt, and the influence such doubt exerted over the jury in their consideration of the evidence. Counsel especially complain of the 10th and 11th. These are as follows: "10. But this rule of law which clothes every person accused of a crime with the presumption of innocence, and imposes on the State the burden of establishing his guilt beyond a reasonable doubt, is not intended to aid any one who is in fact guilty of crime to escape, but is a humane provision of the law, intended so far as human agencies can, to guard against the danger of any innocent person being unjustly punished. And by reasonable doubt, is not meant a whim, or captious or speculative doubt. It is properly termed a reasonable doubt, as distinguished from an unreasonable or speculative doubt, and it must arise from all the evidence relating to some material fact or facts, charged in the indictment, and not spring from mere subsidiary evidence. Such doubt may also arise from the absence of evidence as to material matters.

"11. But the doctrine of reasonable doubt, as a rule, has no proper application to mere matters of subsidiary evidence, taken item by item, but is applicable always to the constituent elements of the crime charged, and to any fact or group of facts which may constitute the entire proof concerning any of the constituent or elementary facts necessary to constitute guilt. If from the whole evidence, or the want of evidence, any material fact essential to a conviction has not been established to your satisfaction beyond a reasonable doubt, as explained in these instructions, the defendant should be acquitted."

The insistence is that both of these charges are

wrong, for the reason that each deny that the doctrine of reasonable doubt has any application to mere matters of subsidiary evidence. The law in this respect, as declared in these instructions, is in accord with that asserted by this court in *Wade* v. *State*, 71 Ind. 535. While the State in a criminal prosecution may rely upon mere subsidiary or subservient facts, yet, in a broader sense, it must, in order to convict, rely upon and establish beyond a reasonable doubt all the material facts which constitute the accused guilty of the crime charged. It is to such facts, and not to the mere items of subsidiary evidence which may aid in proving the essential facts, that the rule of reasonable doubt applies. These charges otherwise are in harmony with the decisions of this court, and we perceive no available objections that can be urged against them. In fact, when these are considered together with the others given upon the question of reasonable doubt, we are of the opinion that the jury was fully and correctly advised as to the law applicable to that feature of the case.

Appellant presented and requested the court to give to the jury a series of some twenty-seven instructions, all of which were refused, and upon this action of the court appellant predicates error. Some of these, under the facts in the case, are so palpably wrong that the court's refusal to give them merits no special review. Others are sufficiently embraced in those given by the court, and were properly refused upon this ground. By instruction three, of those requested, the court was asked to inform the jury that there was no evidence as to what transpired at the office of Dr. Stout except the testimony of the latter, which it declares disproved that any criminal action was there performed, and therefore the jury should acquit the defendant. Appellant's own admissions and other material evi-

dence bearing upon this question are wholly ignored in this charge, and the bare denial of Stout is to result in his acquittal. The error is apparent.

The elements of the fourth charge requested, upon the question of reasonable doubt, were embraced in those given, and the court was not bound to repeat them. The fifth and sixth advised the jury to acquit the defendant if the death of Miss McClamrock was not the result of the miscarriage. These were properly refused upon this question, for the reason heretofore stated. The ninth and tenth also relate to the question of reasonable doubt, and are substantially embraced in those given. Charge seventeen, as requested, was to the effect that if the jurors were not convinced beyond a reasonable doubt that the accused took Miss McClamrock to the office of Dr. Stout for the purpose of having an abortion procured, they must acquit him, unless it was further made to appear, beyond such a doubt, that after he arrived at the office he in some way "aided and assisted" in the procurement of the abortion. Section 1857, Burns' R. S. 1894 (1788, R. S. 1881), provides as follows: "Every person who shall aid or abet in the commission of a felony, or who shall counsel, encourage, hire, or command, or otherwise procure a felony to be committed, may be charged, etc., as if he were a principal."

The instruction narrowed these provisions of the statute to aiding and assisting, to the exclusion of all the other acts therein defined that may render a party guilty in like manner as the principal offender.

The purpose that induced him to take the girl to the office of Stout was not material, if appellant aided or abetted in the commission of the felony charged, or counseled, encouraged, hired, or commanded, or otherwise procured it to be committed. In either of these events, under this section of the statute, he would be

Hauk *v.* The State.

guilty the same as though he was a principal, and might be tried and convicted in like manner, and subjected to the same penalty. For the reasons stated the instruction was not correct, and was therefore properly refused.

The eighteenth is also open, in part, to the same objections that may be urged against the seventeenth, and it may be further said in its condemnation that its tendency was to confuse and mislead the jury. The leading idea expressed therein was that if the jury was not satisfied beyond a reasonable doubt that the abortion in question was procured by the defendant and Dr. Stout, in the office of the latter, in Fountain county, the defendant must be acquitted. It was uncertain, and tended to mislead, in this, that the jury might in reason have understood it as meaning that the miscarriage in dispute must have occurred in Stout's office in order to render the defendant guilty of the crime charged. It was rightfully rejected for this reason alone. The nineteenth instruction refused in part declared, that: "Any admission or confession verbally made by the defendant and written down by another is subject to mistakes that may arise from the misunderstanding of the meaning of the words used by the defendant, or by using words not used by the defendant, or by substituting the language of the person so writing down such admission or confession, for that of the defendant." To have given this instruction as written would unquestionably, under the decisions of this court, have been an invasion upon the province of the jury. It cannot be said, as a matter of law, that the admissions of the defendant, under the circumstances mentioned, are subject to mistakes. It was proper matter of argument to the jury that the evidence in question under the facts might be or was

subject to mistake, and the court might have properly called the attention of the jury to this question. The following decisions fully support our conclusions: *Garfield* v. *State*, 74 Ind. 60; *Davis* v. *Hardy*, 76 Ind. 272; *Morris* v. *State, ex rel.*, 101 Ind. 560; *Unruh* v. *State, ex rel.*, 105 Ind. 117.

Number 20 requested the court to charge the jury that if they believed that the part of defendant's confession which referred to an arrangement made with Dr. Stout, January 11, 1896, was false, then the jury had the right to disregard the confession entirely.

It is manifest, we think, that the court would not be authorized to advise the jury that if they did not believe a part of the defendant's own voluntary admission relative to his guilt, then they were at liberty, for this reason alone, to reject the whole of this evidence, regardless of the fact that they might believe the part rejected to be true. The rule asserted by the ancient maxim of the law of evidence, *falsus in uno falsus in omnibus*, is interpreted by the courts to mean that where a witness willfully swears falsely as to some material matter in a cause so as perjury may be imputed to him, the jury may disregard his entire testimony, unless it be corroborated by other evidence. *Lemmon* v. *Moore*, 94 Ind. 40. Or, in other words, it may be said that the jury ought not to reject that part of the witness' testimony which, under the circumstances, they believe to be true. The instruction was properly refused.

By instructions 22, 23, 24, and 25, requested by appellant, he sought to have the court submit the competency of his written confession to the jury for its decision, upon the alleged ground that it was made by him under the influence of fear produced by threats.

The question of the exclusion of this confession as incompetent evidence, for the alleged reason that it

was made through fear produced by threats, became a preliminary one, to be determined by the court, and this legal question under the evidence given thereon having been settled by the court, appellant was not entitled to have it submitted to the jury for its decision. *Brown* v. *State*, 71 Ind. 470; *Redd* v. *State*, 69 Ala. 255; 3 Rice on Evidence, section 308; 1 Greenl. Ev., section 219; 1 Phil. Ev. *543.

Instruction 26, which asked the court in effect to direct an acquittal in view of the evidence, merits no consideration.

During the selection of the jury appellant challenged for cause two jurors. Both of these challenges were overruled. Complaint is made of these rulings. The opinion which these jurors had formed seemed to be based upon reading accounts in the papers and talking with persons other than witnesses. The examination of the jurors clearly shows that they were each capable of acting impartially in determining the particular issue to be tried, and, under the provisions of section 1862, Burns' R. S. 1894 (1793, R. S. 1881), the court properly exercised its discretion in holding that they were competent to serve.

Two physicians, Barcus and Olin, testified in behalf of the State in regard to a *post mortem* examination made upon the body of Grace McClamrock. Doctor Barcus, after detailing to the jury fully what he had observed upon this examination relative to the condition of the womb and the afterbirth, etc., gave it as his opinion that there had been a miscarriage. He was then asked to state "Whether, from the conditions found, the miscarriage occurred from some natural physical difficulty, or whether by some foreign interference." In response to this question, the witness said that in his judgment the miscarriage was brought about by some foreign interferences. The contention

of counsel for appellant is that the question was not
competent, for the reason that it assumed that the
miscarriage which the witness had stated in his opin-
ion had resulted, was caused by some physical defect
or by some foreign interference. Possibly the ques-
tion was somewhat suggestive and faulty, but it does
not appear that appellant was in any manner pre-
judiced thereby.

It is also insisted that the admission of this evidence
was erroneous for the reason that it preceded the
proof of the *corpus delicti.* Counsel are, however, mis-
taken in their insistence, for the very purpose of this
evidence was to show that a miscarriage had been
produced, and the means by which it had been brought
about. This certainly tended to prove the *corpus de-
licti* as defined in *Traylor* v. *State,* 101 Ind. 65. See,
also, *People* v. *Aikin,* 66 Mich. 460, 11 Am. St. 512, 33
N. W. 821. The evidence was competent, its weight
being a question for the consideration of the jury. Dr.
Olin was the physician who attended Miss McClam-
rock, at the request of appellant, at the time of her al-
leged miscarriage; and he was permitted to give evi-
dence of what he discovered upon an examination of
his patient during his attendance, and also the fact
that the miscarriage occurred while he was present
as her physician. Appellant objects to this evidence
mainly upon the ground that under the provisions of
section 505, Burns' R. S. 1894, the doctor was pro-
hibited from testifying to any facts or matter dis-
covered by him in the course of his professional busi-
ness. The rule declared by the statute, which forbids
a physician to reveal in evidence matters discovered
by him in the course of professional attendance or
treatment of a patient, is intended to protect the
latter, and not to shield one who is charged with per-
petrating an unlawful act upon the patient. The stat-
ute cannot be so construed as to permit a party

charged with crime, to invoke it as a weapon of defense in his own favor, instead of its being used as a protection to his victim. This interpretation, in our opinion, accords with reason and is supported by authority. *Pierson* v. *People*, 79 N. Y. 424, 35 Am. Rep. 524. The court did not err in admitting the evidence in dispute.

Dr. Stout, a co-defendant, testified on the trial in behalf of appellant. This witness resided at Covington, Indiana, and had resided at the latter place for about fifteen months, and over, prior to the trial. Before removing to Covington he resided at the town of Hillsboro, some fifteen miles from the former place. The evidence shows that after the doctor left Hillsboro and located at Covington he continued to practice his profession at the former place, and made frequent visits to this town. There was evidence introduced by the State tending to impeach the moral character of the doctor at Covington, and the State then, for the purpose of further impeaching the moral character of this witness, introduced some ten witnesses who resided at Hillsboro. These, over the objection of appellant, were permitted to testify as to the general reputation of the doctor for morality at Hillsboro. Appellant insists that the impeaching evidence ought to have been confined, under the circumstances, to Covington, where the witness sought to be impeached resided at the time of the trial. When the character of a witness is assailed the inquiry relates to his character at the time of the trial, or examination, or some period reasonably near to these dates. This seems to be the rule asserted by the drift of the authorities. It is disclosed that this witness had lived at Covington only about fifteen months, that he continued to practice at his former residence, and made frequent visits to that town. We think that the State had the right to trace his reputation back to his former home, and

show that he was there also in bad repute for morality. This evidence, under the circumstances, is fully authorized by the holdings of this court in *Memphis, etc., Packet Co.* v. *McCool*, 83 Ind. 392, 43 Am. Rep. 71; *Pape* v. *Wright*, 116 Ind. 502; *Houk* v. *Branson*, 17 Ind. App. 119; *Sage* v. *State*, 127 Ind. 15.

Appellant, over the State's objections, introduced in evidence a letter purporting to have been written January 10, 1896, by Grace McClamrock, being about eight days before the alleged attempt to produce the abortion on her. This letter in part tended to show that she herself had attempted to produce the miscarriage, and apparently was introduced for that purpose. The State introduced the father of Grace, and his evidence tended to show that the letter was not genuine. Appellant then offered some evidence which it is claimed tended to rebut that introduced by the State upon the authenticity of the letter in question. This was excluded by the court, and this, it is said, was error.

The learned counsel for the State contend that the letter was not proper evidence in the defendant's favor, and that the court ought to have sustained the State's objections, and excluded it. We are of the opinion that this contention is correct, and that appellant was not entitled to have this letter considered by the jury as evidence in his favor. Under the circumstances, it was not competent upon any legal ground. It was written, as it appears, several days before the commission of the offense which is averred to have subsequently resulted in causing the death of the girl, and therefore there could be no claim that it was of the character of a dying declaration upon the part of the deceased. The letter was but a narrative of a past transaction, accompanied by no act whatever, and was not surrounded by any circumstances that could im-

press it with the ordinary sanction of an oath. It was
of the character of hearsay, and open to the same ob-
jections, and the court erred against the State in ad-
mitting it in evidence: *Jones* v. *State*, 64 Ind. 473; *Com-
monwealth* v. *Felch*, 132 Mass. 22; *People* v. *Aikin*, *supra*.

In *Jones* v. *State*, *supra*, the defendant was charged
with murder, and offered to prove that another person
had threatened to kill the deceased, and after the
death of the latter admitted that he had committed
the crime. It was held by this court that this evidence
was correctly rejected.

In *Commonwealth* v. *Felch*, *supra*, the defendant was
charged with the crime of abortion, from the effects of
which his victim died. On his trial he offered to prove
that, a short time before the alleged offense, the woman
stated to the witness that she was pregnant by a per-
son other than the defendant. That if this witness
would not procure a miscarriage for her, or get some
one to do so, she would operate upon herself. It ap-
peared that these declarations were neither accom-
panied by nor explanatory of any act. The court held
the evidence to be hearsay, and therefore not admis-
sible.

Appellant not being entitled to use this letter as
evidence, consequently cannot be heard to complain
of that introduced by the State to assail its authen-
ticity, or by the action of the court in rejecting that
which he offered to sustain it. It is evident that in
this respect he was not prejudiced in any of his rights.

His counsel next, and finally, urge that the evidence
does not prove the guilt of appellant. We have ex-
amined and considered the evidence, and are satisfied
that it fully justifies the jury in their finding. The
evidence, as it is disclosed to us in the record, cannot
be explained upon any hypothesis consistent with the
innocence of the appellant. We have given this ap

peal a careful examination, and find nothing to show that appellant was not given a fair and impartial trial, and under the facts rightfully convicted.

The judgment is, therefore, affirmed.

## ON PETITION FOR REHEARING.

PER CURIAM.—Counsel for appellant, in their brief, on petition for a rehearing, again earnestly insist: 1st. That there was an abuse of discretion upon the part of the lower court in denying appellant's application for a change of venue from the county. 2d. That the trial court erred in admitting in evidence the confession of appellant. 3d. That the court erred in refusing to instruct the jury that if they believed that the confession was made under the influence of fear produced by threats, they should reject it, and give it no consideration. It is therefore contended that this court erred in sustaining the rulings of the lower court upon these several questions.

We have again given these and the other questions raised in this appeal a careful review and consideration, and can find no reason to disapprove the conclusions reached in the original opinion. It is contended that it was the province of the jury to determine whether the confession of the accused was made under the influence of fear produced by threats, and if they believed such to be a fact, they must reject it as evidence. Or, in other words, we are asked to virtually adjudge that the jury ought to have been permitted to exercise the prerogative of the court and decide the question of the competency of the confession as evidence. It was held, at the original hearing of this appeal, that the court having in the first instance held that the confession was competent, appellant could not require it to submit the question of its competency to the decision of the jury. The compe-

tency of any character of evidence is a question exclusively for the determination of the court. The weight or credibility, however, to which it is entitled is a matter exclusively for the decision of the jury in accordance with the rules of law relative to that question.

The rule affirmed by the authorities cited by the court in the original opinion, and the correct one, we think, is that which requires the court to determine at the trial as a preliminary question, whether the confession of the person accused of the crime is incompetent upon the ground that it is the offspring of fear produced by threats.

When the court holds the confession admissible as evidence, it must be received by the jury, and it is not within their province to reject it as incompetent. The credibility, effect, or weight to which it is entitled, as in other evidence, is a question which the jury has the right and must determine for themselves. In deciding this question, they may and ought to look to, and consider all of the facts and circumstances under which the alleged confession was made. The credibility of the confession being a legitimate subject of inquiry upon the part of the jury, it may be impeached by the defendant in any authorized manner. While the jury may believe it to have been involuntarily made by reason of the hopes or fears of the confessor having been unduly excited, still, if there is evidence which confirms or corroborates it, so as to impress the jury with the belief of its truth to their satisfaction, in that event they would not be justified in rejecting the confession solely upon the ground that they believed it to have been involuntarily made.

In deciding upon the credibility of a confession, or upon the effect, or weight to which, if any, it is entitled, the jury has the right to subject it to the same

The Cleveland, etc., Railway Company v, Gray.

tests, as far as applicable, as they would in ascertaining the credit or weight due to other evidence, and after performing this duty, if they consider it unworthy of credit, it is their right and duty then to reject it. The instruction in question was not framed so as to present to the jury the correct test to be applied by them in determining the credit or weight to be given to the confession as evidence, and was properly refused by the trial court. In addition to the authorities cited in the original opinion the following support the rule herein asserted: *Young* v. *State,* 68 Ala. 569; 3 Rice on Evidence, section 314; *Simmons* v. *State,* 61 Miss. 243.

Petition overruled.