JOSEPH KYLE

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed April 17, 1905.*

1. MURDER—*when jury may be instructed to find accused guilty of murder.* Under an indictment for murder the accused may be found guilty of manslaughter if the evidence so warrants, but if the facts hypothetically stated in an instruction constitute the crime of murder, it is not error to instruct the jury to find the accused guilty of murder if they find the facts stated to be proved beyond a reasonable doubt.

2. SAME—*when failure of instruction to state right of accused to act in self-defense is not error.* Failure of an instruction for the People in a murder trial to state that the accused could avail himself of the right of self-defense, although he provoked the difficulty, if he had declined to further participate in the struggle before the mortal wound was inflicted, is not error, where the evidence is that the struggle was brief and continuous, no attempt of accused to decline combat being shown.

3. SAME—*right of self-defense is not based on accused's mere belief of danger.* The right of a person to act in self-defense does not rest upon his mere belief of danger, regardless of the circumstances or whether such belief was reasonable or not.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding.

WILLIAM P. LAUNTZ, and FREELS & JOYCE, for plaintiff in error.

W. H. STEAD, Attorney General, and FRED J. TECKLEN-BURG, State's Attorney, (GEORGE B. GILLESPIE, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Plaintiff in error, Joseph Kyle, was indicted in the circuit court of St. Clair county for the murder of Richard Miller, and was found guilty by a jury, who fixed his pun-

ishment at confinement in the penitentiary for a term of seventeen years. The court denied a motion for a new trial and sentenced him in accordance with the verdict.

The defendant was a bar-tender for his brother, Tom Kyle, in a negro saloon in the city of East St. Louis. It was an all-night saloon, where there was dancing, and the defendant acted alternately as night bar-tender and day bartender during successive weeks. On the evening of May 19, 1903, he commenced work at seven o'clock, to remain in charge until nine o'clock the next morning. In the front of the building was the bar. Back of that, and separated from it by a board partition with an opening in it, was a room containing two pool tables, where gambling and a crap game were also carried on, managed by Mack Johnson, and back of that there was a kitchen, from which lunches were served, in which Oscar Hall was the cook. At about 8:30 o'clock that evening a crap game was going on between a number of negroes. Richard Miller, who was commonly called "Big Boy," came into the room, and another negro, after winning a dime at the crap table, divided with Miller and gave him a nickel, with which Miller won another nickel and then played for a dime and lost it. He claimed the dime, however, and it was given to him, when he played it again and lost but claimed that he had won. He became noisy and demanded a dime, and Mack Johnson offered him a nickel, which he refused. Another negro called "Sonny," who was playing pool, offered him a dime if he would keep still or get out, but he did not accept it and continued his demand in loud and profane language. Defendant, hearing the noise, went back to the gambling room and told Miller to stop or leave the place. Miller replied with an oath that he would not leave without getting his dime. Defendant went back to the bar, and a witness testified that he said to Miller: "Wait until I come back and I will kill you." A revolver and stick or club were kept behind the bar, and defendant took them and returned to the gambling room. He had the club in one

hand, and the testimony varied as to its size from that of an ordinary walking stick to nearly as large as the leg of a table. The evidence for the People was that he had the revolver in the other hand, while the testimony for the defendant was that the revolver was in his front trousers pocket. A witness for the prosecution testified that he had taken hold of Miller and started toward the street when they met the defendant coming back with the club and revolver, when Miller fell back and picked up some pool balls. There was evidence that as defendant came into the room he told those present to get out of the way, and they began to scatter, and hid behind the stove and furniture. Miller picked up three pool balls and there was a pool table between him and the defendant. Miller threw one of the balls at the defendant, who dodged behind the pool table. As Miller threw the second ball defendant again dodged and shot him in the abdomen, causing a fatal wound. Miller threw the third ball, and just at that time defendant fired a second shot, which went into the ceiling. Miller ran behind the stove and seized a boy and pushed him in front of him, and both of them fell on the floor. Defendant followed him and struck him with the club, when Miller clinched him and tried to get the revolver out of his hand. Defendant called to Mack Johnson, who ran up and took the revolver. Miller, although fatally wounded, threw the defendant, but they were separated and Miller was led out of the building, when he fell and was taken to a hospital, where he died.

The homicide was admitted, and the defense was that Miller assaulted the defendant by throwing the first pool ball at him and was in the act of throwing the second one, inducing in the defendant a reasonable and well grounded belief that he was in danger of losing his life or suffering great bodily harm, when the shot was fired in necessary self-defense. The evidence as to what occurred was conflicting and was all given by persons whose testimony shows them to have been of a very low type, with whom moral or legal

obligations or sanctions would have but very little, if any, weight. If the testimony for the prosecution was worthy of belief, the defendant armed himself and returned to the room where Miller was, with the apparent intention of executing a threat to kill him without legal provocation. The witnesses for the defendant who testified that he had the revolver in his trousers pocket until he was threatened by Miller with the pool balls were more numerous than the witnesses for the prosecution, but none of the witnesses were of such character that we can safely rely upon their testimony as true. The question before the jury was purely one of credibility as between the witnesses, and we cannot say from the record that they ought to have believed the witnesses for the defendant. There is no circumstance outside of the testimony of the witnesses having any weight as evidence, and the jury having seen and heard the witnesses and given credit to those who testified for the prosecution, we are unable to say that their conclusion was wrong.

It is not claimed that any error was committed in the course of the trial except in giving and refusing instructions, and in considering them as a whole it is clear that the jury were very fully and fairly instructed as to the law. What facts would constitute the crime of murder and what would amount to manslaughter were fully and correctly stated to the jury, who were also informed that they could find the defendant guilty of murder or manslaughter. The doctrine of self-defense, whether the danger was real or only apparent, was fully and fairly stated, and forms of verdicts were given to the jury to be used in case they should reach a conclusion that the defendant was either guilty of murder or manslaughter or was not guilty. The chief objection is to the following instruction given at the request of the prosecution:

"If you believe, from the evidence, beyond a reasonable doubt, that the defendant, without provocation, sought and provoked a quarrel with Richard Miller for the purpose of

killing him, and in the quarrel did kill him, with the malicious intention of taking the life of Richard Miller, you will find him guilty of murder."

It is argued that the instruction assumed the existence of evidence from which the jury could find that the defendant sought and provoked a quarrel with Richard Miller for the purpose of killing him, and that there was no such evidence. There was no provocation except the language of Miller to the defendant, and the legal effect of such language as matter of provocation was explained in other instructions. There was evidence, as already stated, that when the defendant went after the revolver and stick he told Miller to wait until he should come back and he would kill him; that defendant got the revolver and came back with it and the club, commanding everybody to get out of the way and apparently about to execute the threat. There was evidence upon which to base the instruction. It is further objected that the instruction directed the jury to find the defendant guilty of murder if they found the facts stated had been proved by the evidence beyond a reasonable doubt, when they had the right to find him guilty of manslaughter. Under an indictment for murder a defendant may be found guilty of manslaughter if the evidence proves such a crime, but if the facts, hypothetically stated, constitute the crime of murder and are proved by the evidence beyond a reasonable doubt, the law authorizes a conviction of murder, and it is not error to so instruct the jury. (*Crowell* v. *People,* 190 Ill. 508.) If the evidence established, beyond a reasonable doubt, the facts stated in the instruction, the defendant was guilty of murder.

The ninth instruction given at the request of the People is claimed to be erroneous because not based on the evidence, and because it assumes that the defendant brought the quarrel with Miller upon himself and that the necessity of self-defense was brought on by his deliberate and lawless acts. The instruction is not subject to the objections stated, for the reasons that there was evidence tending to prove the facts

stated and that the facts were stated hypothetically, without assuming their existence. That is a proper method of stating facts to which a certain rule of law is to be applied if the facts are proved by the evidence beyond a reasonable doubt. It is further urged that the instruction ignored the rule that the defendant could avail himself of the right of self-defense although he provoked the quarrel or difficulty, if he afterwards declined to participate further in the struggle before the mortal wound was given. The instruction does omit that qualification, and if there were any evidence tending to prove that the defendant at any time declined a further struggle the omission would be prejudicial. But there was no evidence whatever tending to prove that fact. All the evidence was that the contest was continuous and only lasted a very brief space of time. The jury could not have found that the defendant declined further struggle, for want of any evidence tending to prove it. As applied to this case there was no error in the instruction.

The eleventh instruction given at the request of the prosecution related to the effect of threats by Miller prior to the time of the shooting, on the subject of justification of the defendant. It was clearly intended to apply to the time when the defendant came back with the revolver and club, when Miller was doing nothing nor attempting to do anything to carry out any previous threat. It is true that at the time the shot was actually fired and the fatal wound given Miller was throwing a pool ball at the defendant; but the rule of law stated was a correct one, and we do not see how the instruction could have harmed the defendant.

The sixth instruction is objected to as assuming that every intentional killing amounts to murder. The only purpose or effect of the instruction was to inform the jury as to the effect of words of reproach as a provocation in law, and the rule stated was not incorrect.

Complaint is made that the court refused the eleventh instruction asked by the defendant, relating to the presumption

of innocence. If given it would have been a mere repetition of the principles of law given in two other instructions, and for that reason it was not error to refuse it.

The fourteenth instruction which was refused was incorrect in basing the right of self-defense on the belief of the defendant as to danger, regardless of the circumstances or whether such belief was reasonable or not.

We find no error which would justify a reversal of the judgment, and it is affirmed.             *Judgment affirmed.*