## JESSE KOSER

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed December 22, 1906.*

1. CRIMINAL LAW—*general verdict is presumed to be based upon the sufficient counts.* If a verdict of guilty is general and there are any good counts in the indictment to which the evidence is applicable the verdict will be presumed to be based upon the sufficient counts.

2. SAME—*distinction between criminal responsibility for a result and the proper pleading of the cause thereof.* There is a distinction between criminal responsibility for a certain result and the proper pleading of the cause which produced such result, and an averment in an indictment for murder that death resulted from beating with the fists is not sustained by proof that death was occasioned by a fall upon a stone as the result of a blow from defendant's fist, although the defendant is criminally responsible in either event.

3. INDICTMENT—*when count of an indictment for murder is sufficient.* A count in an indictment for murder charging that defendant struck the deceased a violent blow in the face, thereby knocking him down upon divers stones and rubble on the ground with such force and violence that the skull of the deceased, "by reason of the violent contact of the head" of the deceased with said stones and rubble, was thereby fractured, giving him a mortal wound, is sufficient, even though there is no *direct* averment that the head of the deceased came in contact with such stones and rubble.

4. MURDER—*when verdict may rest on count charging death to have been caused by "means" unknown.* A general verdict of guilty of murder may rest upon count charging death to have been caused by "means, instruments and weapons to the grand jury unknown," even though no grand juror was called to prove that the means were unknown, where the evidence is uncertain as to whether death resulted from the blow given by the plaintiff's fist, or from a blow with a rock, or from contact with a rock on the ground when deceased was knocked down.

5. SAME—*instructions based upon facts constituting murder may call for verdict of guilty of murder.* If the instructions in a murder trial embody the elements essential to the crime of murder, it is proper to direct the jury, if they believe the elements so specified are proven by the evidence beyond a reasonable doubt, to find the

accused guilty of murder; and it is not error to omit from such instruction any reference to finding verdict of guilty of manslaughter.

6. MALICE—*malice is implied from unprovoked murderous assault.* Malice aforethought is imputed from an unprovoked murderous assault from which death results, and hence if an instruction is based upon a hypothetical state of facts from which the law will imply the element of malice it is not necessary to otherwise include it.

WRIT OF ERROR to the Circuit Court of Carroll county; the Hon. R. S. FARRAND, Judge, presiding.

Edward Koser and his two sons, Frank and Jesse, were indicted by the grand jury of Carroll county for the murder of Jacob Weaver. Upon the trial Edward and Frank were acquitted and Jesse was convicted of murder and his punishment fixed at a life sentence in the penitentiary. After overruling motions for a new trial and in arrest the court entered judgment on the verdict, and this writ of error is sued out to bring the record into review in this court.

Plaintiff in error was about seventeen years old when the homicide was committed, and resided with his father's family in Savannah. The deceased also resided in Savannah, near the Koser family. Considerable ill-feeling had existed between the two families. About a week before the killing an unmarried woman who had resided in the Koser family gave birth to an illegitimate child. On the afternoon of June 24, 1905, plaintiff in error and his father were informed by Thomas Runyan that Jacob Weaver had said that Edward Koser was the father of the illegitimate child. About 5:30 P. M. of the same day Edward Koser and the deceased met in front of Squire's saloon and engaged in a bitter quarrel, each challenging the other to fight. It is shown that plaintiff in error made threats against Weaver during the evening. About 9:30 in the evening plaintiff in error accosted deceased on his way home and asked him what he had been saying about him, to which deceased replied "nothing," whereupon plaintiff in error struck deceased

in the face, knocking deceased down upon a pile of broken stone. Plaintiff in error claims that he only struck deceased one blow, and that with his fist, but there is evidence in the record tending to show that he struck deceased with a rock which he held in his hand and that several blows were inflicted. There is evidence from which the jury would be warranted in believing that plaintiff in error was lying in wait for deceased with the intention of assaulting him at the place where the difficulty occurred. Frank Koser was a few feet away from the parties at the time but did not take any part in the fight. Edward Koser was twenty or thirty feet away, going toward his home. It seems to be conceded that plaintiff in error was the only person who inflicted the injuries on the deceased. After the difficulty Weaver was unable to get up, and he was carried to the Koser home by plaintiff in error and his father and a physician sent for. Weaver died about the time the physician arrived. A post-mortem examination of the body disclosed that the jaw-bone of deceased was fractured and a part of it driven in and upwards, and that there were some abrasions of the skin about the neck and face. There was an incised wound, about one inch long, under the left eye and a cut through the upper lip; also an indented fracture of the skull in the back of the head, and a scalp wound at that point about the size of a silver half dollar. In addition to the wounds above described other marks and slight bruises were found on the body, not, however, of a character to have contributed to or produced death. The deceased was about sixty-three years old, in good health, and weighed about 175 to 180 pounds.

The indictment contained eight counts. The first charged that the assault was made with the fists and feet of the defendants. The second charged that the assault was made by means, instruments and weapons to the grand jurors unknown. The third charged the assault was made with the fists of the plaintiff in error, and that the other defendants were accessories thereto before the fact. The fourth is the

same as the third, except all are charged with the assault. The fifth count charges the plaintiff in error with making the assault, and the other defendants were charged with aiding, abetting and assisting. This count charges the plaintiff in error did unlawfully, willfully, feloniously and of his malice aforethought make an assault, and that he with his fist did strike the deceased a violent blow about the face, thereby knocking down the deceased with great force and violence upon divers stones and rubble upon the ground, with such force and violence that the skull of the deceased was fractured and wounded, and from the effects of which the deceased died. The sixth count is, in substance, the same as the third. The seventh and eighth counts merely charged that the defendants entered into a conspiracy. The last two counts are of no importance in the record as it is presented here.

RALPH E. EATON, and C. W. MIDDLEKAUFF, for plaintiff in error.

W. H. STEAD, Attorney General, and F. J. STRANSKY, State's Attorney, for the People.

Mr. JUSTICE VICKERS delivered the opinion of the court:

1. Plaintiff in error contends that the fifth count in the indictment is insufficient and should have been quashed. The other counts are not questioned, but it is said there was a variance between such other counts and the evidence. The verdict being general, if there are any good counts to which the proofs are applicable the verdict will be presumed to be based on such sufficient counts. The alleged variance concerns the cause of death. The charge in the third, fourth and sixth counts is, that death was the result of injuries inflicted by "striking" and "beating" the deceased with the fist. In the first count it is alleged that death was caused by "striking, beating and wounding" with the fists and feet. The second count charges that death was caused by means,

instruments and weapons to the grand jurors unknown. In the fifth count alone it is charged, in effect, that the deceased was struck with the fist and knocked down upon the ground and upon stones and rubble, and that the fall upon such stones and rubble caused death. The evidence proves that plaintiff in error struck deceased one or more blows and that the deceased fell on a pile of stones, and from this circumstance the inference is drawn that the wound in the back of the head was caused by the fall on the stones. Three physicians testify that death resulted from the shock produced by both of the injuries combined,—that is, the injury to the jaw and skull.

A distinction is to be borne in mind between the rules of criminal responsibility for a result and the proper pleading of the cause that produced the result. Thus, when a man's will contributes to impel a physical force, whether such force proceeds directly from another or from another and himself, he is to be held responsible for the result, the same as if his own unaided hand had produced it. (2 Bishop on Crim. Law,—7th ed.—sec. 637.) In *Cunningham* v. *People*, 195 Ill. 550, it was said (p. 573) : "If the blow so physically affected the deceased as that from the injurious effects thereof he was rendered unable to stand and walk, and as a consequence fell upon the cobble-stones and death resulted from the fall, the blow is to be regarded as the cause of death, even though it might not, within itself, have proven mortal. (2 Bishop on Crim. Law,—7th ed.—sec. 637.) If death results indirectly from a blow through a chain of natural causes, unchanged by human action, the blow is regarded as the cause of death.—*Kelly* v. *State,* 53 Ind. 311."

One may be responsible for a homicide by exposing a child or a helpless person to inclement weather, contagious diseases or other dangers which result in death. (21 Cyc. 695.) In such cases the object is to lay down the general rules of criminal responsibility, and not the rules of pleading. If one maliciously or recklessly and wantonly should

push another off of a bridge, and he should fall in the water and be drowned, the pushing would be the proximate cause of death and the author of the act would be guilty of murder or manslaughter, according to the circumstances. In the above illustration the act of pushing the party off the bridge would be regarded as the proximate cause of death, and hence would arise responsibility, both civil and criminal; but if an indictment for the homicide, based on the facts in the illustration, alleged the death to have resulted from the pushing and the proof was the deceased was drowned, clearly there would be a variance, to avoid which it would be necessary to charge the wrongful act of the defendant, and follow by charging that by reason of such wrongful act the deceased was thrown into the water and drowned.

The language used by this court in *Cunningham* v. *People, supra,* quoted above, is not to be understood as laying down a rule of criminal pleading, but only as announcing the general rule of criminal responsibility for a wrongful assault. In the case at bar those counts of the indictment wherein it is charged that death resulted from the striking and beating with the fists are not sustained by proof that death resulted from a fall on stones and rubble as a result of the blows. We cannot, however, agree with plaintiff in error that the fifth count of the indictment is defective. The charging part of this count, and to which the criticism is directed, is as follows: "That one Jesse Koser, late of the said county of Carroll, on the 24th day of June, in the year of our Lord one thousand nine hundred and five, at and within the said county of Carroll, in and upon one Jake Weaver, (also then and there known as Jacob Weaver,) said Jake Weaver being then and there in the peace of the said people, did then and there unlawfully, willfully, feloniously and of his malice aforethought make an assault, and that he, the said Jesse Koser, with his right fist did then and there unlawfully, willfully, feloniously and of his malice aforethought strike him, the said Jake Weaver, a violent blow in and about the face

of him, the said Jake Weaver, thereby knocking down with great force and violence, upon divers stones and rubble upon the ground, the said Jacob Weaver, with such force and violence that the skull of the said Jake Weaver by the force of said blow, and by reason of the violent contact of the head of him, the said Jake Weaver, with said stones and rubble, was thereby then and then fractured and wounded, thereby giving then and there to the said Jake Weaver, in the manner and form aforesaid, one certain mortal wound in and upon the back of the head of him, the said Jake Weaver, of and from which said mortal wound the said Jake Weaver, on the day and year last aforesaid, died."

The point insisted on by plaintiff in error is, that there is no direct averment that the head of deceased came in contact with the stones and rubble. This objection is not, in our opinion, tenable. True, the charge is not directly made that the blow knocked the head of the deceased down unto and against the stones and rubble, but it is clearly averred that the blow in the face did knock the said Jacob Weaver down with great force and violence upon divers stones and rubble upon the ground, with such force and violence that by the force of said blow, and by reason of the violent contact of the head of Jacob Weaver with the stones and rubble, the skull was fractured, thereby giving the said Jacob Weaver a mortal wound in the back of the head, from the effect of which he died. In our opinion the averment that the deceased was knocked down upon the stones and rubble is sufficiently certain and explicit to meet the most exacting requirements of criminal pleading.

But if the fifth count should be held insufficient and that a variance exists as to the first, third, fourth and sixth, this conviction can be sustained under the second count, which charges death to have been caused by some "means, instruments and weapons to the grand jurors unknown." True, no member of the grand jury was called to prove that the means were unknown, but the law seems to be that this

allegation need not be proven, in the first instance, by the People. (22 Cyc. 447; *Commonwealth* v. *Thornton*, 14 Gray, 41; *Harris* v. *State*, 37 Tex. Cr. 441; *Commonwealth* v. *Coy*, 32 N. E. Rep. 4; *Commonwealth* v. *Holmes*, 32 id. 6; *Coffin* v. *United States*, 156 U. S. 432.) Under the facts as they were developed on the trial, and in view of uncertainty as to the direct cause of death and the precise means by which such injury was inflicted, the verdict here may well rest on the second count.

2. It is contended that instruction No. 10 given for the State should have been refused. The objection to this instruction is based on the assumption that the fifth count is not good. We have already disposed of the objection to the fifth count, and since that count is held sufficient, the objection to the tenth instruction, based on the assumption that the count is not good, need not be discussed.

It is objected that the fourth, seventh, eighth, eleventh and twelfth instructions are erroneous because they conclude by directing the jury to find the defendant guilty of murder. In each instruction a state of facts is recited from which, if found to exist by the jury, the legal conclusion that the accused is guilty of murder would necessarily follow.

But it is said the law permits a jury to find a verdict of manslaughter even when the evidence would warrant a conviction of the higher offense. The cases of *Panton* v. *People*, 114 Ill. 505, *Lynn* v. *People*, 170 id. 527, and *Steiner* v. *People*, 187 id. 244, are cited and relied on by plaintiff in error to support his contention. These cases have been re-examined and distinguished in the later cases of *Crowell* v. *People*, 190 Ill. 508, and *Carle* v. *People*, 200 id. 494. (See, also, *Kyle* v. *People*, 215 Ill. 250.) Of course, the jury may, —that is, they have the power,—find a defendant guilty of manslaughter where the evidence proves a case of murder, but it is not the intention in granting this power to a jury that it will be abused and perverted by convicting of manslaughter in a case where the evidence shows a willful and

malicious murder. It might be argued that because a jury has the power to acquit even where the evidence proves guilt, therefore the court ought not to instruct the jury that it was a duty to convict where the evidence proves guilt beyond a reasonable doubt. The law pronounces homicides committed with malice aforethought murder, and it is not error to embody all the elements of such crime in an instruction, and tell the jury that if those elements are proven beyond a reasonable doubt, the duty of the jury, under the law and under their oaths, is to convict of murder.

It is also contended that instruction No. 4 is erroneous because it omits the element of malice aforethought and fails to negative self-defense. In regard to the last objection, there was no question of self-defense in this case. No contention that such defense was relied on is found anywhere in the record. It was only proper for the court to instruct the jury with respect to such rules of law as were applicable to the case. Had the doctrine of self-defense been invoked by plaintiff in error and any evidence offered tending to support such defense there would be some force in this objection, but under the facts of this case the law of self-defense was very properly ignored by the instructions of the court. The objection that the instruction omits the element of malice aforethought is untenable. The instruction tells the jury that if they believe, from the evidence, beyond a reasonable doubt, that the defendants assaulted, beat and struck the deceased in a manner likely to cause his death or do him great bodily injury, and did thereby cause his death, as charged in the indictment, they should convict of murder. If the deceased was assaulted, struck, beaten and killed, "as charged in the indictment," it was with malice aforethought, for it was so charged. Besides, if an unprovoked murderous assault is made and death results, the malice aforethought is implied from the character of the assault. If malice is implied it need not be proven. The instruction stated a hypothetical state of facts from which malice, in law, would be

224—14

implied, hence it was not necessary to otherwise include it in the instruction. 21 Cyc. 707, 708, and cases there cited; Clark & Marshall on Law of Crimes, secs. 62, 242; Starr & Cur. Stat. sec. 140, p. 1307.

3. It is next insisted by plaintiff in error that the court erred in refusing instructions 22, 31, 32, 33, 34, 36, 37, 40, 45 and 46 requested by plaintiff in error. Instruction 22 is to the effect that if, in certain counts in the indictment, death was alleged to have resulted from striking, beating and kicking the deceased the jury should find the defendant not guilty. The instruction ignores entirely the second and fifth counts, both of which, as we have seen, are good counts, and in neither of them is it charged that death resulted from the striking, beating and kicking. This instruction was properly refused. Instruction No. 31 is open to the same objection just pointed out to 22 and was properly refused for the same reason. Instruction No. 33 was properly refused for the reason that it recites that all the counts in the indictment except the fifth charge that the deceased was killed by striking and beating, when, as already stated, the second charged that the killing was by means, instruments and weapons unknown to the grand jury. Instruction No. 34 purports to state an abstract proposition of law and the refusal to give it was not error. All the other instructions which were refused and of which plaintiff in error complains appear, upon examination, to be open to some of the objections already pointed out in those discussed or other vices justifying the court in refusing them, and we find no reversible error in refusing them.

4. It is next insisted that the court erred in admitting the alleged confession of plaintiff in error made to the coroner and deputy sheriff, and also in admitting his statement, made under oath, to the coroner's jury. Before the court permitted the evidence to go to the jury the jury were withdrawn and the court heard all the evidence tending to show whether the alleged confession was made voluntarily or oth-

erwise. We have carefully read the testimony offered before the judge and out of the hearing of the jury, and are entirely satisfied that the statements of plaintiff in error were freely and voluntarily made, and were not induced by threats, intimidation, coercion or promises. The same may be said with respect to the statement of Edward Koser. The witnesses who testified out of the hearing of the jury were Dr. Schreiter, the coroner, the State's attorney, Charles D. Crouse, a member of the coroner's jury, and the three defendants then being tried. Taking the version of the plaintiff in error, his father and brother as to what influence was used to secure the alleged statement from plaintiff in error, it would not be sufficient to exclude the written statement made before the coroner's jury. There was no error in admitting these statements in evidence.

5. It is finally contended that the verdict is not supported by the evidence. We are unable to assent to this contention. No extended re-statement or discussion of the evidence is necessary. The evidence, taken in its entirety, simply shows that the plaintiff in error took up his father's side of the quarrel with the deceased and volunteered to assault and beat the deceased; that in pursuance of this purpose he stopped deceased on the road home and made an assault on him. Plaintiff in error now contends that he assaulted the deceased with his fists and only struck him one blow. John Smith testifies that plaintiff in error came to his livery barn about eleven o'clock on the night of the difficulty and told Smith that he had killed Jake Weaver; that he hit him with a rock which plaintiff in error held in his hand. Plaintiff in error, in his written statement before the coroner's jury, said that he hit deceased about the mouth with his fist and that deceased fell back and sidewise on the rocks in the road, and that he hit deceased three other blows in the face while he was down. When the wounds found upon the face and head of deceased are taken into consideration they afford corroboration of these statements of plaintiff in error, and

tend to show that one or the other of his previous statements, and probably both of them, are nearer the truth than his present contention. The jaw of deceased was fractured and his lip was split or cut through to the teeth. The lip was separated and the parts severed so that one could place a finger in the opening. The teeth were loosened. A cut one inch in length was found under the eye and a wound on the neck as large as a half dollar, and the skull was fractured on the back of the head. In the presence of these physical and indisputable facts the jury no doubt did not believe the claim now set up that plaintiff in error only struck deceased one blow with his fist.

Finding no reversible error in the record the judgment is affirmed.