Carter *v*. State—172 Ind. 227.

## CARTER *v*. THE STATE OF INDIANA.

[No. 21,338.    Filed April 23, 1909.]

1. CRIMINAL LAW.—*Abortion.*—*Drugs.*—*"To the Grand Jurors Unknown."*—*Proof.*—*Variance.*—Under an indictment charging defendant with procuring a woman to miscarry from taking a certain drug "to the grand jurors unknown," it is not necessary for the State, in the first instance, to prove affirmatively that such drug was unknown to the grand jurors; but it is necessary to establish before the trial jury that such drug was unknown or its identity uncertain, the presumption being that if unknown to the trial jury it was unknown to the grand jury. *Stone* v. *State,* 30 Ind. 115, and *Foster* v. *State,* 106 Ind. 272, disapproved. p. 228.

2. CRIMINAL LAW.—*Name of Criminal or Means of Crime.*—*"To the Grand Jurors Unknown."*—*Proof.*—*Variance.*—Where defendant presents evidence tending to show that the grand jurors did know the name of the person or the means charged to be unknown, it is incumbent upon the State to prove that the grand jurors did not know thereof. p. 232.

3. INDICTMENT AND INFORMATION.— *Offenses.*— *Description.*— *Unknown Facts.*—The charge in an indictment that certain facts were "to the grand jurors unknown," is neither descriptive of nor of the essence of the offense. p. 233.

4. EVIDENCE.—*Inferences Drawn from Inferences.*—It is not permissible to infer a fact from inferences. p. 234.

5. CRIMINAL LAW.— *Procuring Miscarriage.*— *Death.*— *Statutes.*— Where a person procures a woman, pregnant, or supposed to be, to take a drug to produce a miscarriage, and she dies from the effects thereof, such person is properly prosecuted under §2256 Burns 1908, Acts 1905, pp. 584, 663, §367, providing that whoever commits such act shall be guilty of a felony; and the offense is complete when the miscarriage is produced. p. 234.

6. CRIMINAL LAW.— *Procuring Miscarriage.*— *Evidence.*—Evidence showing that defendant procured and gave to the deceased

woman, who was pregnant, "pennyroyal pills," and that she took them, miscarrying five days later, from the effects of which she died, sustains a conviction for procuring a miscarriage. p. 234.

7. EVIDENCE.— *Res Gestae.— Procuring Miscarriage.—Declarations of Woman.*—Inquiries by a pregnant woman as to mechanical means of producing a miscarriage are not admissible, as a part of the *res gestae,* or otherwise, in a prosecution against defendant for procuring a drug and giving same to her to produce a miscarriage. p. 236.

From Criminal Court of Marion County (37,007) ; *James A. Pritchard,* Judge.

Prosecution by The State of Indiana against Thomas Carter. From a judgment of conviction, defendant appeals. *Affirmed.*

*Henry N. Spaan* and *Edwin B. Pugh,* for appellant.

*James Bingham,* Attorney-General, *Alexander G. Cavins, Edward M. White* and *William H. Thompson,* for the State.

MYERS, J.—Appellant was tried and convicted under the fourth count of an indictment charging him with procuring a woman to miscarry from taking "a certain drug, medicine and substance, to the grand jurors unknown," such miscarriage not being necessary to preserve her life, from which the woman, on November 8, 1907, died.

Over a motion for a new trial, appellant was sentenced to the Indiana Reformatory. The only question presented is upon the motion for a new trial.

It is urged that the verdict is contrary to the evidence, for the reason that there is no affirmative evidence that the grand jury did not know what "drug, medicine or substance" was taken by the deceased, and the case of *Stone* v. *State* (1868), 30 Ind. 115, is relied on in support of this contention. We do not understand the rule in *Stone* v. *State, supra,* or *Foster* v. *State* (1886), 106 Ind. 272, to be as insisted by appellant, though the statement is pretty broad. It is evident that the courts of Massachusetts have not so understood the declaration in *Commonwealth* v.

*Stoddard* (1864), 9 Allen 280, to which *Stone* v. *State, supra,*
refers. The last case cited has been followed, upon this
question, in *Foster* v. *State, supra,* which also cites *Blodget*
v. *State* (1852), 3 Ind. 403, *McLaughlin* v. *State* (1873), 45
Ind. 338, and *Moore* v. *State* (1879), 65 Ind. 213. None of
the cases cited, except *Stone* v. *State, supra,* involves the
question here. In *Blodget* v. *State, supra,* it affirmatively
appeared by the evidence that the prosecuting witness was
before the grand jury, and knew, but was not asked, as to
the name of the party to whom liquor had been sold, the in-
dictment charging that the name of the person to whom
liquor was sold was unknown. In *McLaughlin* v. *State,*
*supra,* the indictment was held insufficient, because it did not
set out the names of persons to whom the sale of the liquor
was alleged to have been made, and the names were not al-
leged to be unknown to the grand jury. The reasons for
such requirement are well stated in that case. The judg-
ment in *Moore* v. *State, supra,* was reversed because the in-
dictment charged the playing of billiards by a minor ''with
persons whose names are unknown,'' and the evidence showed
playing with an individual, and the court instructed the jury
that playing with a ''person'' authorized conviction. The
case of *Commonwealth* v. *Stoddard, supra,* is the basis for
*Stone* v. *State, supra,* and there is no question of the unneces-
sary adoption in the latter case of a specific declaration in the
former, but an examination of the cases upon which *Com-*
*monwealth* v. *Stoddard, supra,* is based, discloses an entire
want of anything in those cases which warrants the declara-
tion in the Stoddard case, if it can be said to go to the length
here insisted upon. In *Commonwealth* v. *Tompson* (1848),
2 Cush. 551, it was directly held, that if the name was given
in one count, and in another alleged to be unknown to the
grand jurors, and the evidence was insufficient to establish
the name as alleged, and there was no other evidence tending
to prove the true name, the jury was warranted in finding
on the second count that the name was unknown. In *Com-*

*monwealth* v. *Thornton* (1859), 14 Gray 41, it was held that
if the evidence showed that the name of a person alleged to
be unknown to the grand jurors was in fact known, that it
was a variance, but that such fact must appear from the evi-
dence, clearly placing the burden on the defendant, if he re-
lies on that fact. That is the rule, too, in *Blodget* v. *State*,
*supra*, which is grounded on the proposition that if the wit-
ness was before the grand jury, and knew the name alleged
in the indictment to be unknown, but was asked nothing
about it, and the fact was so disclosed to the traverse jury,
there was a fatal variance.

That the courts of Massachusetts have not understood the
case of *Commonwealth* v. *Stoddard, supra,* as going to its ap-
parent length, or have declined to follow it, is clear from
later cases in that state. In *Commonwealth* v. *Glover*
(1873), 111 Mass. 395, 401, it is distinctly held that if a ques-
tion should arise under the evidence, as to whether the grand
jury did know the name, the burden would then be upon the
commonwealth to show that they did not know, clearly im-
plying that, unless the question arose under the evidence, it
was not an affirmative fact to be shown in the first instance,
and *Commonwealth* v. *Stoddard, supra,* is cited on that prop-
osition, as showing the court's construction of that case. In
*Commonwealth* v. *Martin* (1878), 125 Mass. 394, 396, it was
held that the state was not required to prove affirmatively
that the means by which death was inflicted was un-
known to the grand jury, though so charged. In *Common-
wealth* v. *Gallagher* (1873), 126 Mass. 54, 56, it was held
that, where there was no evidence that the grand jury had a
description of bills, as to which they allege "a more particu-
lar description of which is to the grand jurors unknown," no
question was presented. In *Commonwealth* v. *Luddy*
(1887), 143 Mass. 563, 566, 10 N. E. 448, it was held that,
where there is no evidence upon the point whether the name
charged as unknown was or was not known, the question does

not arise. "It has been decided that under a count of this kind, in the absence of evidence tending to show knowledge on the part of the grand jury, the commonwealth need not prove affirmatively that it was ignorant of that which is alleged to be unknown." *Commonwealth* v. *Coy* (1892), 157 Mass. 200, 216, 32 N. E. 4. In that case it is also said: "This part of the allegation is in no proper sense a description of the offense."

In *Commonwealth* v. *Noble* (1895), 165 Mass. 13, 42 N. E. 328, a case similar to this with respect to the offense charged, the means used being alleged to be unknown, the proof showed that the witness to sustain the charge before the traverse jury was before the grand jury, and testified that he had testified before the grand jury the "same" as at the trial, and it was held not a variance; that if it were to be effective there must have been the affirmative testimony before the trial jury as to what the evidence given was, so that the trial jury itself could determine whether he had testified the "same," and that even in the evidence there was much uncertainty as to the instrumentalities used, and the grand jury had stated, with as much certainty as the nature of the evidence warranted, the producing cause. The question has arisen in other jurisdictions, and the direct opposite of the rule of *Commonwealth* v. *Stoddard, supra,* is declared, if it is to be understood as going to the length here claimed, and we think upon much better reasoning. *White* v. *People* (1865), 32 N. Y. 465; *Noakes* v. *People* (1862), 25 N. Y. 380; *Coffin* v. *United States* (1895), 156 U. S. 432, 451, 15 Sup. Ct. 394, 39 L. Ed. 481; *Koser* v. *People* (1906), 224 Ill. 201, 79 N. E. 615; *Woodring* v. *Territory* (1904), 14 Okla. 250, 78 Pac. 85; *Guthrie* v. *State* (1884), 16 Neb. 667, 669, 21 N. W. 455; *Reeves* v. *Territory* (1900), 10 Okla. 194, 61 Pac. 828; *State* v. *Wilson* (1862), 30 Conn. 500; *Jorasco* v. *State* (1879), 6 Tex. App. 238, 241; *Cheek* v. *State* (1862), 38 Ala. 227, 235; *Rex* v. *Bush* (1818), 1 Russell & Ryan (Eng.

Cr. Cas.), 371; 1 Bishop, Crim. Proc. (2d ed.), §551; 22 Cyc., 447; 10 Ency. Pl. and Pr., 509; *People* v. *Smith* (1909), 239 Ill. 91, 87 N. E. 885..

The true rule, both upon reason and the authorities, is that, if the name of a person, or means used to accomplish an unlawful end, are alleged by the grand jury to be unknown, it is not incumbent upon the State to show in the first instance affirmatively that such fact was unknown to the grand jury; but it is incumbent upon the State to prove to the traverse jury that the fact alleged to be unknown is unknown, or to prove such a state of facts or circumstances as render the alleged unknown fact uncertain, in which event such fact is presumed to have been unknown to the grand jury; but if there is evidence tending to show that the grand jury did know, or could by the use of reasonable diligence have known, the fact alleged to be unknown, or was negligent or perverse in not alleging what was at its command to know, then the burden is upon the State to show that the grand jury did not know the alleged unknown fact. The presumption in favor of the allegation of the grand jurors is no different from the presumption that they possess the necessary qualifications. *Willey* v. *State* (1874), 46 Ind. 363, 365.

We are fortified in these views from the cases heretofore cited, and from the further consideration that it is uniformly held that if after an indictment is returned in which there is an allegation of a matter or name as unknown such matter or name becomes known, no variance results. The result at most would simply be the application of the rule here stated, that it would then be incumbent on the State to show that the name or matter was unknown to the grand jury. Wharton, Crim. Pl. and Pr. (9th ed.), §§111, 112; Wharton, Crim. Ev. (9th ed.), §97.

This rule imposes no burden or hardship on a defendant, and does not remove or lessen the burden upon the

State. Such allegations are neither descriptive of nor

3. of the essence of the offense. The case of *Stone* v. *State, supra,* is not at variance with the rule we have stated, for it is there distinctly stated that there was no proof on the subject of the Christian name's being unknown, so that no inference could arise against the allegation of the indictment. In *Foster* v. *State, supra,* it appeared from the evidence on the trial that there was no evidence before the grand jury that the name of the person who committed the larceny in question was unknown, or upon the subject of the name of such person, that a witness before the grand jury did know the name of the thief, but that the grand jury assumed that his name was unknown, and made no inquiry about that matter. It does not appear by whom this evidence was produced, and the court refrained from expressing an opinion as to whom the burden rests upon where the name of a third person involved is alleged to be unknown. It is there said: "The evidence before us very clearly indicates that Howard's name was not, in legal contemplation, unknown to the grand jury when the indictment was returned against the appellant." In so far as any statement in *Stone* v. *State, supra,* or *Foster* v. *State, supra,* may be construed as holding that it is incumbent upon the State in the first instance to show that the grand jury did not know what is alleged to be unknown, those cases are disapproved, but we do not understand that either of those cases so holds, and under the facts in those cases they are in conformity with the rule here asserted.

The evidence in this case fully discloses that the drug, medicine or substance taken by the woman was not known, and in the nature of the case could not be known; that some compound having a trade name, the component parts of which were unknown, was administered. Hence it must have been a fact also unknown to the grand jury.

The subject of the abortion died from a disease known as Pyæmia (pus in the blood), which is produced by a germ

shown invariably to be introduced from the exterior, and defendant here lays stress on the fact of this cause of death, from which it is argued that some means other than drugs or medicines were used, by which infection was produced. Simply one presumption built upon another.

The gravamen of the offense (§2256 Burns 1908, Acts 1905, pp. 584, 663, §367), is prescribing or administering to a pregnant woman, or woman supposed to be pregnant, any drug, medicine or substance whatever, with intent to produce a miscarriage, or the suggesting, directing or advising the use of any instrument or means whatever, with such intent, whereof the woman miscarries or dies, miscarriage not being necessary to preserve her life, and in case of death the charge is properly made under this section. *Montgomery* v. *State* (1881), 80 Ind. 338, 41 Am. Rep. 815. In this case, death occurred in about two months after the miscarriage, but the offense is complete when the miscarriage is produced contrary to the statute.

It is insisted by appellant that there is no evidence in the record that the "drug, medicine or substance," taken by the deceased at the instigation of the appellant, produced the abortion. It is shown that the woman was unmarried, and about twenty years of age; that appellant was twenty-three years of age at the time of the trial; that he had seduced her, and had been having sexual intercourse with her during a period of about two years; that they had been living together as husband and wife some three or four months before the abortion; that when she became pregnant she urged him to marry her, which he refused to do; that he procured, and urged her, over her objection, to take, what he told her were pennyroyal pills, for the purpose of procuring a miscarriage; that she took them as he directed, taking the last one Sunday evening, and she aborted Thursday night; that she took nothing except what he had given her, and did nothing else. The ingredients

of the "pennyroyal pills" which she took are not known or not shown. "Pennyroyal pills" are an emmenagogue, and that name is given to some two dozen varieties of compounds of various substances, including ergot. There is evidence that "pennyroyal pills" will not produce miscarriage. This evidence is based upon the supposition that "pennyroyal pills" are made of pennyroyal; but the evidence shows that it is a name used for compounds which are emmenagogues; and there is no evidence as to the substances in the particular pills, but appellant evidently understood their uses, and procured them and urged the woman to take them for the express purpose of producing a miscarriage.

There is also evidence that no medicine can be said to be sure of producing a miscarriage, and that nothing but mechanical means can be so relied on; but the evidence shows that many kinds of medicine may, and do produce miscarriage, depending upon the physical condition of the female. The evidence shows that the woman had an adhesive womb, and that the likelihood of miscarriage is greater both from natural and artificial means than in case of the normal womb, and it is argued that an abortion was inevitable, and could as well be ascribed to the peculiar condition of the womb as to some unknown drug, medicine or substance. If appellant's position be correct on that point, it only accentuates the offense, by showing that she was in a condition the more readily to abort by the use of "pennyroyal pills." But the evidence shows a medicine, drug or substance given, the specific properties of which are to contract the womb and produce menstruation, or miscarriage. The evidence also shows that it was procured by appellant; that he urged the woman to take it for the specific purpose of producing a miscarriage; that it was taken as directed by him; that a miscarriage resulted; that the woman became very sick; that she was unconscious and unattended when the miscarriage resulted, and for a day or two afterwards, and the conditions can be better imagined than described, so that the

opportunities for the infection from which death actually resulted are doubtless attributable to these conditions, but they do not avoid the force of the evidence on the one question which constitutes the crime with which appellant is charged.

Complaint is also made of the exclusion of certain evidence offered—claimed as part of the *res gestae*—that, some days prior to the taking of the medicine, the woman

7.  had made inquiries as to mechanical methods of producing miscarriage. At most, it could only be an inference that she might have used some mechanical means, and that such means might have produced her miscarriage, and inferences cannot be built upon inferences. Gillett, Indirect and Collat. Ev., §52. It is manifest that such evidence was not competent as a part of the *res gestae* when shown to be a matter of inquiry only, made some days before the taking of the medicine, and unconnected with any act or declaration of intent, and especially when taken with the other evidence in the case, in which it is disclosed that nothing was used but the drugs procured by appellant. It was clearly not admissible under the evidence and charge here of producing an abortion by medicine or drugs. *Hauk* v. *State* (1897), 148 Ind. 238, 262, 263; *Siebert* v. *People* (1892), 143 Ill. 571, 584, 32 N. E. 431; *State* v. *Fitzgerald* (1895), 130 Mo. 407, 429, 32 S. W. 1113.

There is evidence to support every material fact necessary to constitute the offense charged, and the judgment is affirmed.