(No. 30968.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JACOB MARROW, Plaintiff in Error.

*Opinion filed March 24, 1949.*

Manuel M. Wiseman, of Alton, and James O. Monroe, Jr., of Collinsville, for plaintiff in error.

George F. Barrett, Attorney General, of Springfield, and William T. Henderson, State's Attorney, of Danville, (Frank J. Meyer, and John W. Unger, both of Danville, of counsel,) for the People.

Mr. Justice Daily delivered the opinion of the court:

The defendant, Jacob Marrow, was indicted in the circuit court of Vermilion County for the murder of Herman Holcombe on September 16, 1947. He pleaded not guilty, waived a trial by jury, and after a hearing before a judge, was found guilty as charged and sentenced to the penitentiary for the term of his natural life. Defendant prosecutes this writ of error.

The facts in the record show that defendant and his wife lived together in an apartment in Danville, Illinois,

from June, 1947, to approximately September 10, 1947. On the latter date, defendant's wife left Danville without his knowledge and returned with her parents, who had been visiting her in Danville, to their home in Oklahoma. As a result of her action, defendant immediately gave up their apartment and moved into the home of his sister, Helen Wooley, and her husband, Walter Wooley, in Danville, where he shared a bedroom with Herman Holcombe, the deceased, a roomer with the Wooleys. Some sort of reconciliation was made between defendant and his wife by telephone, and she expressed her intention of returning to Danville on September 17, 1947. The day prior to such date, defendant remained home from work to make repairs on his car. It appears that the work was done in the Wooley back yard, and tools which were stored on the back porch of the residence were used. Wooley also remained home and about three o'clock in the afternoon drove defendant to town to get car parts. When the two men returned home, shortly before four o'clock, they found that defendant's wife was there, she having arrived a day early. Wooley testified that she came out of the house and commenced to cry; that he told her not to cry, that everything was going to be all right; that the three of them immediately got into the car and drove to Mrs. Wooley's place of employment where they picked her up and then returned to the Wooley home. Defendant and his wife were apparently composed and on friendly terms during the trip.

On arriving home defendant and his wife did not enter the house but went to the back porch where they remained for an hour. They were called to supper around five o'clock but both declined to eat and repaired to the front room of the house where they remained for another hour. The record contains little of what transpired between the two, but Mrs. Wooley testified that they appeared to be quarreling, and that on one occasion during the two hours

defendant slapped his wife. The slapping occurred, how-ever, before the deceased appeared on the scene.

Herman Holcombe, the deceased, occupied two rooms of the Wooley home. For a few days prior to September 16, 1947, he had shared his bedroom with the defendant. On said date Holcombe returned home, entering by the kitchen door, shortly after six o'clock. The Wooleys were seated at the kitchen table and defendant and his wife were still in the front room. Mr. Wooley invited Holcombe to eat supper. He refused but stated that he would take a cup of coffee. Mrs. Wooley, being short of coffee, stated that she would have to go to the store and get more, called to defendant's wife to go with her, and the two women left by the front door of the house. Defendant followed them out and they last saw him standing on the front porch as they drove away. Wooley was the only witness to the events that followed. He testified that he and Holcombe remained seated at the kitchen table. The kitchen was quite small, twelve by twelve feet in size, and contained a stove, a washing machine, a table described as being four by four feet, and chairs for the table. The kitchen had two doors, one leading to the back porch and the other to the front room. As Wooley and Holcombe sat at the table, Holcombe's back was to the outside door. They talked some few minutes after the departure of the ladies, and Holcombe remarked that defendant's wife "seemed like a good woman to him," or words to that effect, and immediately afterwards defendant entered the back door with a heavy wrench in his hand. Wooley testified that defendant walked around Holcombe and stopped at a corner of the table, where he was facing him on an angle, and stated that he had heard the remark about his wife and that defendant's family affairs were none of Hol-combe's "damn business." Holcombe then rose from his chair and moved around the table toward the defendant, and they met at the corner of the table. Wooley testified

that the deceased "pushed his hands up" with the palms facing the defendant, and said: "You don't mean that, Jake," whereupon defendant struck Holcombe a blow on the side of the head with the wrench. He stated that when defendant came into the kitchen he was holding the wrench up in plain sight; that he made no threats or visible signs of violence before the blow was struck. As to Holcombe's actions, the witness stated that he too made no threats or signs of violence as he approached the defendant. The witness was not sure if Holcombe had touched the defendant, and stated that he did not know if the deceased had struck or pushed the defendant immediately before the blow with the wrench was struck. Following the blow, Holcombe fell to the floor and defendant attempted to revive him by pouring water on him. When a close examination showed that Holcombe was dead, defendant threw the wrench into the back yard, where Wooley later pointed it out to police authorities.

The foregoing facts were testified to by Wooley and his wife as their knowledge applied. It was further shown by the People that defendant was twenty-four years old, whereas the deceased was forty-seven years old. A medical witness testified that Holcombe died of wounds received by a blow in the head. The only witnesses for the defense were four persons who testified to an acquaintanceship with defendant both before and after his four-year term of service in the Army, and as to his reputation as a peaceable and law-abiding citizen. The defendant did not testify.

The errors assigned by defendant in this court are based on but one main contention, and that is that there is no basis in the record presented for a finding of express or implied malice in his act. Malice, either express or implied, is a necessary element of the crime of murder. (Ill. Rev. Stat. 1947, chap. 38, par. 358; *People* v. *Wilson*, 342 Ill. 358.) Malice is the element which marks the degree of turpitude and distinguishes cases of murder from man-

slaughter. (*People* v. *Lewis*, 375 Ill. 330.) Deliberate intention is necessary to constitute express malice but the law implies malice where no considerable provocation appears or where all of the circumstances show an abandoned and malignant heart. (*People* v. *Henderson*, 398 Ill. 348.) Malice is implied where one person deliberately injures another, and if a person uses a deadly weapon on another, resulting in his death, it must be inferred that the killing was malicious. (*Bonardo* v. *People*, 182 Ill. 411.) If an unprovoked murderous assault is made and death results, the malice aforethought is implied from the character of the assault. (*Koser* v. *People*, 224 Ill. 201.) Every sane man is presumed to intend all the natural and probable consequences flowing from his own deliberate act. Therefore, if one voluntarily and wilfully does an act, the direct and natural tendency of which is to destroy another's life, the conclusion, in the absence of qualifying facts, is that the destruction of such other person's life was intended. (*People* v. *Simmons*, 399 Ill. 572; *Weaver* v. *People*, 132 Ill. 536.) It is conceded by defendant that the rule of presumed malice and intent is one which has been, and may be, followed by this court where the facts justify its application, but he insists that under the facts here the rule cannot, and should not, be applied.

In urging that no malice may be implied from his act, defendant points out that he had no quarrel with the deceased, and that the previous relationship of the parties was one of friendship and close association. While no previous quarrel between defendant and deceased is shown, the evidence in the record limits their alleged close association and friendship to approximately four days before the homicide. Next it is contended that there were no circumstances or inferences to be drawn from the actual attack on the deceased by which malice could be established. In this respect it is urged that the only inference to be drawn is that the act of defendant was caused by "an over-

seas veteran's instability and domestic emotional stress disturbed by uncalled-for remarks and impending attack." As to the defendant's being an unstable war veteran, suffice it to say that there is absolutely nothing in the record upon which such an assertion may be based. The deceased's remarks, while possibly uncalled for, were not derogatory nor such as would tend to arouse one to murderous passion. The fact that such words were uttered by the deceased was not sufficient provocation to relieve defendant of the consequence of his crime. Mere words do not constitute sufficient provocation for an assault, nor will provocation by words only, however opprobrious, mitigate intentional killing so as to reduce the homicide to manslaughter. *Steffy* v. *People,* 130 Ill. 98.

Defendant next urges that malice may not be inferred, because the evidence does not show premeditation. Defendant argues that he did not plan the assault or seek out a weapon with which to accomplish it. The contention is that defendant had the wrench in his hand only as an incident to the work of repairing his car, at which he had been engaged, and that the affair and attack, lasting only a few seconds, were brought about only by the fact that the deceased approached defendant with his hands upraised. The gist of such contention is that the event transpired so quickly and in such a manner that defendant could not have been guilty of malice aforethought. The rule is that it is not necessary that the party charged may have brooded over the intent to kill or entertained it for any considerable time. It is sufficient if, at the instant of the assault, he intended to kill the party assaulted; or it will be enough if he is actuated in making the assault by that wanton and reckless disregard of human life that denotes malice. (*People* v. *Simmons,* 399 Ill. 572.) There is some evidence in the record before us that defendant held the wrench, with which the assault was made, in a manner in which he could readily use it as a weapon; however, it is true that his

precise purpose for bringing the wrench into the kitchen is not shown. When used as it was, the wrench constituted a dangerous weapon and one well calculated to produce the result it did when defendant struck the deceased in the head. We are of the opinion that the attack on the deceased was unprovoked and uncalled for, and the defendant may be presumed to have intended the natural and probable consequences of his act; and malice aforethought may be presumed from the wanton nature of his assault.

Further relying upon the facts, defendant contends that his conduct after the deceased had been killed is indicative of his lack of malice. In this respect he points out that he tried to revive the deceased by pouring water on him; that he did not attempt to escape; made no attempt at secrecy; and that he did not try to hide the murder weapon. In the light of defendant's unprovoked and wanton assault, these elements of his conduct after he had committed the crime, cannot be considered as mitigating factors. Since we find no justification for the attack on the deceased, defendant's actions after the assault have no bearing on his guilt or innocence.

The suggestion that the facts indicate that defendant was acting in self-defense presents a more serious problem. Counsel for the defendant interpret the facts as showing that defendant struck the deceased because he was placed in reasonable fear of an attack when the deceased approached him with upraised hands. We are not in accord with such conclusion. The evidence shows that the deceased uttered no threats against defendant; that he was not armed, and that he did not lay hands upon, strike or push the defendant. His words, as he approached defendant, "You don't mean that, Jake," are not of such a nature as would indicate an impending attack or cause defendant to fear one. The only overt manifestation by the deceased was a "pushing up of his hands," as Wooley described it, with the palms facing defendant. Counsel for defendant

in this court urge that the gesture was threatening in nature and liken it to the approach of a wrestler to his opponent. There is nothing in the record by which we may determine the exact nature of the gesture made by the deceased, however, the judge who presided over defendant's trial, caused the witness, Wooley, to demonstrate the manner in which the deceased raised his arms. The trial judge saw and heard the witness and was in the best position to determine his credibility and the conclusion to be reached from his demonstration. In the light of the trial court's finding of guilt we may conclude that the deceased's gesture was not of such a threatening nature as to convert defendant's act of striking the deceased with a wrench into an act of self defense. There is nothing further in the record to show that defendant's act was prompted by fear of his life or bodily injury, or that he met the alleged assault, if one there was, only with sufficient force to overcome it.

After a careful analysis of all the facts in the record and construing them in the light most favorable to defendant, we are of the opinion that his assault on Holcombe was unprovoked and unjustified. Under such circumstances, as previously pointed out, malice and intent may be implied from the character of the assault. Nor is it necessary that defendant brood over his intent or entertain it for any considerable time. It is sufficient if he is actuated in making the assault by that wanton and reckless disregard of human life that denotes malice. (*People* v. *Wilson,* 342 Ill. 358.) The striking of the deceased in the head with a heavy wrench is such a wanton and reckless act, and defendant is presumed to have intended its consequences. The trial court did not err in finding that the element of malice existed and that it had been proved beyond a reasonable doubt; nor did it err in giving the punishment provided by statute for the crime of murder.

The judgment of the circuit court of Vermilion County is affirmed.

*Judgment affirmed.*